UNITED STATES *v.* STAUFFER CHEMICAL CO.

No. 82–1448.   Argued November 2, 1983—Decided January 10, 1984

*Deputy Solicitor General Claiborne* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Acting Assistant Attorney General Walker, Joshua I. Schwartz,* and *Dirk D. Snel.*

*Charles F. Lettow* argued the cause and filed a brief for respondent.

JUSTICE REHNQUIST delivered the opinion of the Court.

In March 1980, when the Environmental Protection Agency (EPA) tried to inspect one of respondent Stauffer Chemical Co.'s Tennessee plants using private contractors in addition to full-time EPA employees, Stauffer refused to allow the private contractors to enter the plant. Stauffer argues that private contractors are not "authorized representatives" as that term is used in § 114(a)(2) of the Clean Air Act, 84 Stat. 1687, 42 U. S. C. § 7414(a)(2) (1976 ed., Supp. V). Stauffer also argues that the Government should be estopped from relitigating the question of whether private contractors are "authorized representatives" under the statute because it has already litigated that question against Stauffer

and lost in connection with an attempted inspection of one of Stauffer's plants in Wyoming. The Court of Appeals agreed with Stauffer on the merits and also on the collateral-estoppel issue. Without reaching the merits, we affirm the Court of Appeals' holding that the Government is estopped from relitigating the statutory issue against Stauffer.

On March 27, 1980, officials from EPA and the State of Tennessee, accompanied by employees of a private firm under contract to EPA, attempted to inspect Stauffer's elemental phosphorus production plant in Mt. Pleasant, Tenn. Stauffer refused entry to the private contractors unless they would sign an agreement not to disclose trade secrets. When the private contractors refused to do so, the entire group left without making the inspection. EPA later obtained an administrative warrant authorizing the private employees to conduct the inspection, and Stauffer refused to honor the warrant.

On the following day, EPA began a civil contempt proceeding against Stauffer in Federal District Court in Tennessee, and Stauffer simultaneously moved to quash the warrant. It argued that private contractors are not "authorized representatives" under § 114(a)(2) of the Clean Air Act for the purposes of conducting inspections of premises subject to regulation under that Act.[1] The District Court denied Stauffer's motion to quash, accepting EPA's argument that the inspection authority conferred upon "authorized representatives" by the statute extends to private contractors retained by EPA. 511 F. Supp. 744 (MD Tenn. 1981).

---

[1] To carry out its role under the Clean Air Act of supervising the States in their enforcement of national air quality standards, see 84 Stat. 1678, 1680, 1685, 42 U. S. C. §§ 7407, 7410, 7412 (1976 ed., Supp. V), EPA annually inspects approximately 10% of the major stationary sources of air pollution within each State. See Brief for United States 1, n. 2. Section 114(a)(2) provides that "the Administrator or his authorized representative, upon presentation of his credentials . . . shall have a right of entry" to conduct such inspections. 42 U. S. C. § 7414(a)(2) (1976 ed., Supp. V).

On appeal, Stauffer reiterated its statutory argument and also asserted that the Government should be collaterally estopped on the basis of the decision in *Stauffer Chemical Co. v. EPA*, 647 F. 2d 1075 (CA10 1981) (hereinafter *Stauffer I*), from contending that § 114(a)(2) authorizes private contractors to conduct inspections of Stauffer's plants.   In *Stauffer I* officials of EPA and the State of Wyoming, accompanied by employees of a different private firm under contract to EPA, attempted to conduct an inspection of Stauffer's phosphate ore processing plant near Sage, Wyo.   As in the present case, Stauffer insisted that the private contractors sign a nondisclosure agreement, and when they declined to do so, Stauffer refused to allow them to enter the plant.   EPA obtained an administrative warrant authorizing the private contractors to conduct the inspection, and Stauffer refused to honor the warrant.   Stauffer then instituted an action in United States District Court in Wyoming seeking to quash the warrant and to enjoin EPA from using private contractors in inspecting Stauffer's Wyoming plants.   The District Court issued the injunction, and the United States Court of Appeals for the Tenth Circuit affirmed, holding that private contractors are not "authorized representatives" pursuant to § 114(a)(2).   *Id.*, at 1079.

The Sixth Circuit in the present case (hereinafter *Stauffer II*) reversed the District Court, adopting alternative grounds for its decision.   Judge Weick, who delivered the opinion of the court, agreed with the Tenth Circuit that private contractors are not authorized to conduct inspections under the Clean Air Act.   684 F. 2d 1174, 1181–1190 (1982).   Relying on *Montana v. United States*, 440 U. S. 147 (1979), he also held that the Government was collaterally estopped by *Stauffer I* from litigating the statutory question again against Stauffer.   684 F. 2d, at 1179–1181.[2]   Judge Jones wrote a

---

[2] Stauffer raised its estoppel argument for the first time in the Court of Appeals.   It did not argue to the District Court in Tennessee that EPA should be estopped by the prior decision of the Wyoming District Court in *Stauffer I*.   Although the Wyoming District Court had decided *Stauffer I*

separate opinion concurring on the collateral-estoppel issue and concluding that it was inappropriate for the court to reach the merits. *Id.*, at 1190–1192. Judge Siler also wrote separately, dissenting from Judge Weick's opinion on the collateral-estoppel issue but concurring in his opinion on the merits. *Id.*, at 1192–1193. For the reasons which follow, we agree that the doctrine of mutual defensive collateral estoppel is applicable against the Government to preclude relitigation of the same issue already litigated against the same party in another case involving virtually identical facts. Accordingly, we affirm the judgment of the Court of Appeals without reaching the merits.

In *Montana* v. *United States, supra,* we held that the United States was estopped from relitigating in federal court the question of whether the Montana gross receipts tax on contractors of public, but not private, construction firms violates the Supremacy Clause of the United States Constitution. A public contractor, financed and directed by the Federal Government, had already litigated that question in state court, and the Montana Supreme Court unanimously had upheld the tax. In approving the defensive use of collateral estoppel against the Government in *Montana,* we first determined that there was mutuality of parties, see *United States* v. *Mendoza, ante,* at 164, n. 9, that the issue sought to be relitigated was identical to the issue already unsuccessfully litigated in state court, and that there had been no change in controlling facts or legal principles since the state-court action. 440 U. S., at 155–162.

We next looked to see whether there were any special circumstances warranting an exception to the otherwise applicable rules of preclusion. One exception which we

---

by the time the Tennessee District Court decided this case, it had relied on alternative grounds for its decision. See *In re Stauffer Chemical Co.*, 14 ERC 1737 (1980). By the time this case reached the Sixth Circuit, however, the Tenth Circuit had affirmed the District Court in *Stauffer I* solely on the ground that § 114(a)(2) does not authorize inspections by private contractors.

mentioned as possibly relevant is the exception for "unmixed questions of law" arising in "successive actions involving unrelated subject matter." *Id.*, at 162; see *United States* v. *Moser*, 266 U. S. 236, 242 (1924). Noting that the exception first articulated in *Moser* is "difficult to delineate," 440 U. S., at 163, we nonetheless had no trouble finding it inapplicable in *Montana* because of the close alignment in both time and subject matter between the federal-court and the state-court actions. *Ibid.*[3]

Like *Montana* the case at bar involves the defensive use of collateral estoppel against the Government by a party to a prior action. The Government does not argue that the § 114(a)(2) issues in *Stauffer I* and *Stauffer II* are dissimilar nor that controlling law or facts have changed since *Stauffer I*. The Government instead argues that an exception to the normal rules of estoppel should apply because the statutory question here is an "unmixed question of law" arising in substantially unrelated actions. It also argues that the special role of the Government in litigating recurring issues of public importance warrants an exception in cases such as this one. We disagree with both of the Government's arguments.

As commonly explained, the doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and

---

[3] The description of the exception in *United States* v. *Moser* is not very illuminating. There we stated:

"[Estoppel] does not apply to unmixed questions of law. Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases. But a *fact, question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law." 266 U. S., at 242 (emphasis in original).

In *Montana* we paraphrased the exception as applying to "issues of law [which] arise in successive actions involving unrelated subject matter." 440 U. S., at 162.

issues of fact if those issues were conclusively determined in a prior action. *United States* v. *Mendoza, ante,* p. 154; *Allen* v. *McCurry,* 449 U. S. 90, 94 (1980). Our cases, however, recognize an exception to the applicability of the principles of collateral estoppel for "unmixed questions of law" arising in "successive actions involving unrelated subject matter." *Montana* v. *United States, supra,* at 162; see also *Allen* v. *McCurry, supra,* at 95, n. 7; *United States* v. *Moser, supra,* at 242. While our discussion in *Montana* indicates that the exception is generally recognized, we are frank to admit uncertainty as to its application. The exception seems to require a determination as to whether an "issue of fact" or an "issue of law" is sought to be relitigated and then a determination as to whether the "issue of law" arises in a successive case that is so unrelated to the prior case that relitigation of the issue is warranted. Yet we agree that, for the purpose of determining when to apply an estoppel,

> "[w]hen the claims in two separate actions between the same parties are the same or are closely related . . . it is not ordinarily necessary to characterize an issue as one of fact or of law for purposes of issue preclusion. . . . In such a case, it is unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy, even if the issue is regarded as one of 'law'." Restatement (Second) of Judgments § 28, Comment *b* (1982).[4]

Thus in *Montana,* without assigning the label "issue of law" to the claim sought to be relitigated, we determined that

---

[4] An exception which requires a rigid determination of whether an issue is one of fact, law, or mixed fact and law, as a practical matter, would often be impossible to apply because "the journey from a pure question of fact to a pure question of law is one of subtle gradations rather than one marked by a rigid divide." Restatement (Second) of Judgments § 28, Comment *b* (1982).

the exception was inapplicable because of the close alignment of time and subject matter between the state-court action and the federal-court action. If the exception was inapplicable in *Montana*, as we held that it was, we have no trouble concluding that it is also inapplicable here.

Both *Stauffer I* and *Stauffer II* arose as a result of EPA's overview inspection program for supervising state efforts to enforce national air quality standards. See n. 1, *supra*. In both cases private contractors, in addition to EPA and state employees, tried to inspect plants owned by respondent. The inspections occurred just over two weeks apart, and in each case, Stauffer refused to allow the private contractors to enter its plant. Any factual differences between the two cases, such as the difference in the location of the plants and the difference in the private contracting firms involved, are of no legal significance whatever in resolving the issue presented in both cases.

Admittedly the purpose underlying the exception for "unmixed questions of law" in successive actions on unrelated claims is far from clear. But whatever its purpose or extent, we think that there is no reason to apply it here to allow the Government to litigate twice with the same party an issue arising in both cases from virtually identical facts. Indeed we think that applying an exception to the doctrine of mutual defensive estoppel in this case would substantially frustrate the doctrine's purpose of protecting litigants from burdensome relitigation and of promoting judicial economy. See *Parklane Hosiery Co.* v. *Shore*, 439 U. S. 322, 326 (1979).[5]

---

[5] The Government argues for a broader interpretation of the exception. Relying on *Moser*'s language that parties are not estopped in a "subsequent action upon a different demand," *United States* v. *Moser*, 266 U. S., at 242, the Government argues that two cases must have more in common than the same parties and the same legal issue to constitute the same "demand" for estoppel purposes. Thus the Government's argument essentially is that two cases presenting the same legal issue must arise from the very same facts or transaction before an estoppel can be applied. Whatever applicability that interpretation may have in the tax context, see *Commissioner* v. *Sunnen*, 333 U. S. 591, 601–602 (1948) (refusing to apply an estoppel

The Government attempts unpersuasively to supply justifications for overriding those economy concerns and allowing relitigation in cases such as this one. It argues here, as it did in *United States* v. *Mendoza, ante,* p. 154, that the application of collateral estoppel in Government litigation involving recurring issues of public importance will freeze the development of the law. But we concluded in *United States* v. *Mendoza* that that argument is persuasive only to prevent the application of collateral estoppel against the Government in the absence of mutuality. When estoppel is applied in a case where the Government is litigating the same issue arising under virtually identical facts against the same party, as here, the Government's argument loses its force. The Sixth Circuit's decision prevents EPA from relitigating the § 114(a)(2) issue with Stauffer, but it still leaves EPA free to litigate the same issue in the future with other litigants.[6]

---

when two tax cases presenting the same issue arose from "separable facts"), we reject its general applicability outside of that context.

[6] Thus the application of an estoppel in cases such as this one will require no alteration of this Court's practice of waiting for conflicts to develop before granting the Government's petitions for certiorari, nor in the Solicitor General's policy of circumspection in determining when to pursue appeals or file certiorari petitions. See *United States* v. *Mendoza, ante,* p. 154.

The Government argues, however, that in deciding whether to appeal an adverse decision, the Solicitor General has no way of knowing whether future litigation will arise with the same or a different party. The Government thus argues that the mere possibility of being bound in the future will influence the Solicitor General to appeal or seek certiorari from adverse decisions when such action would otherwise be unwarranted. The Government lists as an example *Stauffer I,* from which the Government did not seek certiorari because there was no circuit conflict at the time of the Tenth Circuit's decision. Yet, taking the issue here as an example, the Government itself asserts that "thousands of businesses are affected each year by the question of contractor participation in Section 114 inspections." Brief for United States 28. It is thus unrealistic to assume that the Government would be driven to pursue an unwarranted appeal here because of fear of being unable to relitigate the § 114 issue in the future with a different one of those thousands of affected parties.

The Government also argues that because EPA is a federal agency charged with administering a body of law nationwide, the application of collateral estoppel against it will require EPA to apply different rules to similarly situated parties, thus resulting in an inequitable administration of the law. For example, EPA points to the situation created by the recent decision in *Bunker Hill Company Lead & Zinc Smelter* v. *EPA*, 658 F. 2d 1280 (1981), where the Ninth Circuit accepted EPA's argument that § 114(a)(2) authorizes inspections by private contractors. EPA argues that if it is foreclosed from relitigating the statutory issue with Stauffer, then Stauffer plants within the Ninth Circuit will benefit from a rule precluding inspections by private contractors while plants of Stauffer's competitors will be subject to the Ninth Circuit's contrary rule. Tr. of Oral Arg. 17–18. Whatever the merits of EPA's argument, for the purpose of deciding this case, it is enough to say that the issue of whether EPA would be estopped in the Ninth Circuit is not before the Court. Following our usual practice of deciding no more than is necessary to dispose of the case before us, we express no opinion on that application of collateral estoppel.

We therefore find the Government's arguments unpersuasive in this case as justifications for limiting otherwise applicable rules of estoppel. Because we conclude that the Court of Appeals was correct in applying the doctrine of collateral estoppel against the Government here, we decline to reach the merits of the statutory question in this case. See *Montana* v. *United States*, 440 U. S., at 153. On the estoppel issue, therefore, the judgment of the Court of Appeals is

*Affirmed.*

JUSTICE WHITE, concurring in the result.

I agree with the majority that within the Tenth Circuit Stauffer is insulated from further litigation with the EPA on the private contractor issue. Though it is a harder question,

I also agree that the court below correctly found that the EPA was barred from litigating this issue with Stauffer in the Sixth Circuit, which had not adopted a position on the merits. I write separately because I do not believe that estoppel should be applied any further than that.

I

Relying on *Montana* v. *United States*, 440 U. S. 147 (1979), the majority states that the limits to collateral estoppel on unmixed questions of law, whatever they may be, are not exceeded here where the Government has attempted "to litigate twice with the same party an issue arising in both cases from virtually identical facts." *Ante*, at 172. Two cases need not arise from the very same facts or transaction to constitute the same "demand." *Ante*, at 172, n. 5. "Any factual differences between the two cases, such as the difference in the location of the plants and the difference in the private contracting firms involved, are of no legal significance whatever in resolving the issue presented in both cases." *Ante*, at 172. Thus, this case falls squarely within *Montana*.

*Montana*'s relevance to this case seems to me more limited. *Montana* involved duplicative suits, filed a month apart and each challenging the same state tax on the same contractor working on the same project. The two suits in this case do not seem to me to be as close as those in *Montana*. Assuming, however, that the two "demands" here are as closely related *factually* as those in *Montana*, application of collateral estoppel is still not compelled. The majority's reasoning would be plausible if the second attempted inspection occurred at a different plant and with a different contractor, but within the same circuit as the first. It may be of "legal significance," however, that the inspections occurred in different jurisdictions.

It is true that in *Montana* the first lawsuit was brought in state court and the second in federal. However, the two courts had concurrent jurisdiction. The Government had the

initial choice of suing in either. Having made that choice, it was held to it. See 440 U. S., at 163. This case presents a different situation. The Wyoming inspection could not have been litigated in the Sixth Circuit; the Tennessee inspection could not have been litigated in the Tenth Circuit. It may be fair to say that if the second claim could not have been brought in the same court as the first, it is a different "demand." Cf. *Montana, supra,* at 153 (collateral estoppel is "central to the purpose for which civil courts have been established, the conclusive resolution of disputes *within their jurisdictions*") (emphasis added). In addition, there are considerations of comity in the state/federal situation that are not present as between two circuits. See, *e. g., Allen* v. *McCurry,* 449 U. S. 90, 95–96 (1980).

I do not rely on this conception of the same "demand," however. For even if *Montana*'s delineation of the same "demand" does extend beyond jurisdictional boundaries, there is no justification for applying collateral estoppel, which is a flexible, judge-made doctrine, in situations where the policy concerns underlying it are absent. The notion of the "same demand" is at most a guide to identifying instances where policy does support preclusion. The *Montana* Court itself was very careful to examine general policy reasons for and against preclusion. 440 U. S., at 155, 158–164. Its decision was anything but an inflexible application of preclusion. Because the two suits were on the same demand, the unmixed question of law exception did not apply; but *Montana* neither began nor ended with this question, and neither should the Court here. Preclusion must be evaluated in light of the policy concerns underlying the doctrine.

## II

Collateral estoppel is generally said to have three purposes: to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing

inconsistent decisions, encourage reliance on adjudication."
*Allen* v. *McCurry, supra,* at 94.   It is plain that all three
purposes are served by foreclosing further litigation on this
issue between these parties in the Tenth Circuit, and that
Stauffer should therefore be fully insulated against relitiga-
tion there.   The Government argues that even in the Tenth
Circuit it is entitled to attempt to inspect Stauffer with
private contractors and to relitigate this issue "after an
appropriate time," which it estimates at one year.   Such
an approach would authorize exactly the sort of duplica-
tive litigation that collateral estoppel is designed to avoid.
Cf. *United States* v. *Moser,* 266 U. S. 236 (1924).   Thus,
I unhesitatingly agree with the majority in its rejection
of the Government's position.

### III

Outside the Tenth Circuit, the policies of judicial economy
and consistency are much less compelling.   At least where,
as here, one party is a governmental agency administering a
public law, judicial economy is not advanced; the Government
can always force a ruling on the merits by suing someone
else.   See *ante,* at 173.   See generally *United States* v.
*Mendoza, ante,* p. 154.   And if the circuit has ruled on the
merits in another case, reliance on *stare decisis* is no more
burdensome than reliance on collateral estoppel.   The policy
against inconsistent decisions is much less relevant outside
the original circuit.   Conflicts in the circuits are generally ac-
cepted and in some ways even welcomed.   Indeed, were con-
sistency a compelling concern as between circuits, the deci-
sion of one circuit would bind the others even in litigation
between two entirely different parties.   That is not the route
the federal courts have followed.   However, applying collat-
eral estoppel in other circuits would spare Stauffer the bur-
den of fighting a battle that it has won once.   In the absence
of countervailing considerations, I am satisfied that this in-

terest is adequate to support the lower court's ruling here. See *ante*, at 172.

## IV

Preclusion was justified, however, only because the Sixth Circuit had not previously ruled on the Clean Air Act issue. Stauffer argues that *Stauffer I* also immunizes it in the Ninth Circuit, which has adopted a different rule than the Tenth on the merits. See *Bunker Hill Co. Lead & Zinc Smelter* v. *EPA*, 658 F. 2d 1280 (1981). Under this view private contractors may join EPA inspections of all plants in that Circuit except those owned by Stauffer. The majority does not address this contention, considering it "more than is necessary to dispose of the case before us." *Ante*, at 174. I do address it, however, for it is only because today's result does not afford Stauffer the blanket protection it seeks that I concur in the judgment.

## A

Extending preclusion to circuits that have adopted a contrary rule on the merits would be acceptable were it supported by any affirmative policy. It is not. Judicial economy is not served for the simple reason that no litigation is prevented; the prior litigant is subject to one black-letter rule rather than another. For the same reason, there is no concern about protecting the prior litigant from repetitious, vexatious, or harassing litigation. Finally, to the extent the policy against inconsistent decisions remains relevant when a circuit conflict exists, it cuts the other way. At least some measure of consistency and certainty is obtained by evenhanded application of rules within individual circuits.

## B

Not only is there no affirmative reason for preclusion in such circumstances, powerful considerations cut the other way. Cf. *Standefer* v. *United States*, 447 U. S. 10, 25 (1980). The inconsistency is more dramatic and more troublesome than a normal circuit split; by definition, it com-

pounds that problem. It would be dubious enough were the EPA unable to employ private contractors to inspect Stauffer's plants within the Ninth Circuit even though it can use such contractors in inspecting other plants. But the disarray is more extensive. By the same application of mutual collateral estoppel, the EPA could presumably use private contractors to inspect Bunker Hill's plants in circuits like the Tenth, despite the fact that other companies are not subject to such inspections. Furthermore, Stauffer concedes, and today we hold in *Mendoza*, that the EPA can relitigate this matter as to other companies. As a result, in, say, the First Circuit, the EPA must follow one rule as to Bunker Hill, the opposite as to Stauffer, and, depending on any ruling by that Circuit, one or the other or a third as to other companies.

This confusing state of affairs far exceeds in awkwardness a normal split in the circuits. It is especially undesirable because it grants a special benefit to, or imposes a special detriment on, particular companies. In general, persons present in several circuits must conduct themselves in accordance with varying rules, just as they are subject to different state laws. Other companies with plants in several circuits do not enjoy a favorable rule nationwide, like Stauffer, nor do they have to put up with an unfavorable rule nationwide, like Bunker Hill. A split in the circuits cannot justify abandonment of all efforts at evenhanded and rational application of legal rules. Nor is the mere fact that these companies happen to have been involved in litigation elsewhere sufficient reason for uniquely favored or disfavored status.

Such misapplication of collateral estoppel has been condemned by this Court before. For example, in *United States* v. *Stone & Downer Co.*, 274 U. S. 225 (1927), it had been established in a prior action that certain imports were duty free. In a later suit involving the classification of similar goods imported by the same defendant, the Court of Customs Appeals refused to apply collateral estoppel and this Court affirmed. Application of the doctrine would mean that an importer, having once obtained a favorable judgment,

would be able to undersell others, while an importer having lost a case would be unable to compete. "Such a result would lead to inequality in the administration of the customs law, to discrimination and to great injustice and confusion." *Id.*, at 236. The same concerns were evident in *Commissioner* v. *Sunnen*, 333 U. S. 591 (1948). There the Court noted the inequality that would flow from blanket application of collateral estoppel in the tax area. A taxpayer is not entitled to the benefit of his judgment if there has been "a subsequent . . . change or development in the controlling legal principles." *Id.*, at 599. Otherwise, he would enjoy preferential treatment. Such discrimination is to be avoided, because collateral estoppel "is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers." *Ibid.*

There is no real difference between those cases and this one. In each, the prior litigant escapes strictures that apply to others solely because he litigated the issue once before and prevailed. As the Restatement points out, "[r]efusal of preclusion is ordinarily justified if the effect of applying preclusion is to give one person a favored position in current administration of a law." Restatement (Second) of Judgments § 28, Comment *c* (1982).[1]

## C

Cases like *Sunnen* and *Stone & Downer* merely recognize that collateral estoppel on issues of law, which is a narrow, flexible, judge-made doctrine, becomes intolerable if the rule of law at issue is too far removed from the prevailing legal

---

[1] According to the Restatement, relitigation of an issue is not precluded if "[t]he issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws . . . ." Restatement (Second) of Judgments § 28 (1982). Even if part (a) is inapplicable in the circumstances of this case, it seems clear to me that both prongs of part (b) apply to litigation in a circuit where the prevailing legal rule is different from that established in earlier litigation in another jurisdiction.

rules. Even Stauffer concedes that a decision from this Court on the merits would so affect the "controlling law" that it would lose the entire benefit of the initial judgment in its favor. Similarly, no one contends that if Congress amended the statute to make the opposite result plain, Stauffer could continue to rely on the original judgment. And presumably if the Tenth Circuit were to reverse itself, en banc, and hold that private contractors could make EPA inspections, then Stauffer would no longer be able to keep them out on the authority of *Stauffer I*. Finally, it is apparent that if, for example, Stauffer has plants in Canada, it cannot impose the Tenth Circuit's inspection requirements on the Canadian authorities. Why then should Stauffer be able to use the decisions of the Sixth and Tenth Circuits to estop the Government in the Ninth Circuit, where the opposite rule prevails? The decisions of those other Circuits are not the "controlling law" in the Ninth; the controlling law in the Ninth is exactly to the contrary. There is no difference between this situation and that where the law within a particular jurisdiction has changed since the initial decision.

## V

The doctrine of collateral estoppel is designed to ensure litigants the benefit of prior litigation; this is not the same as ensuring them the benefits of a prior ruling.[2] In arguing that *Stauffer I* precludes the EPA nationwide from relitigat-

---

[2] This distinction is perhaps reflected in the "same demand" limitation on estoppel on pure issues of law. As Professor Scott wrote four decades ago, "if a court erroneously holds that a gratuitous promise is binding, that holding is not conclusive as to subsequent contracts made between the same parties." Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1, 7 (1942). See also *United States* v. *Moser*, 266 U. S. 236, 242 (1924) (res judicata "does not apply to unmixed questions of law . . . [b]ut a *fact, question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action") (emphasis in original). The distinction is between an abstract legal proposition and the application of that proposition to particular facts.

ing this issue against it, Stauffer stretches the doctrine beyond the breaking point. It claims a right to a unique status. Put differently, Stauffer claims immunity from a particular legal rule, not immunity from further litigation. At this point considerations of economy are no longer involved, and Stauffer's approach leads to results that are basically inconsistent with the principle of evenhanded administration of the laws.

In sum, I concur in the judgment of the Court. I do so with the view that preclusion is inappropriate in circuits that have adopted, or later adopt, the contrary legal rule.