John M. ABICK, James R. Bradley, John B. Carruthers, Gerald Clancy, Isadore Coles, Ruth Cotten, Lucius C. Daniel, Jr., Charles W. David, Raymond C. De Ryck, Bruce Goldsmith, Richard A. Hentscehl, Calvin C. Hopkins, Lloyd Jackson, Raymond Kay, John J. Kiritsis, Edward B. Lewand, Phillip Mullen, Steve Radulovich, Elmer Raskin, Clay Reeves, Francis D. Ryan, George L. Van Antwerp, Jr., Bernard Vessels, Richard Viecelli, Julius Watson, Edward Wojtowicz, Charmie Currie, Robert Eston, Thornton Jackson, James Kinnard, Alfonso Newkirk, Robert Perry, Theodis Poole, Robert Ruhl, William Shuford, Raymond Sikora, Ernest Solomon, and Jeramia Weatherly, Plaintiffs,

v.

STATE OF MICHIGAN, Chief Justice G. Mennen Williams, Justice Dorothy Comstock Riley, Justice Charles L. Levin, Justice James L. Ryan, Justice James H. Brickley, Justice Michael F. Cavanagh, Justice Patricia J. Boyle, and State Judiciary Council, jointly and severally, Defendants.

No. 85-CV-70470-DT.

United States District Court, E.D. Michigan, S.D.

April 30, 1985.

Sue E. Radulovich, Ronald P. Sandler, Detroit, Mich., for plaintiffs.

Merry A. Rosenberg, George H. Weller, Asst. Atty. Gen., Lansing, Mich., for defendants.

## OPINION

FEIKENS, Chief Judge.

This action is brought by certain bailiffs ("plaintiffs") for the State of Michigan who allege that the new Michigan Court Rules violate their constitutional rights. Specifically, they claim that by authorizing persons other than bailiffs to serve process, the Rules deprive plaintiffs of a property interest without due process of law or just compensation. I conclude that defendants are immune from suit by virtue of the Eleventh Amendment and legislative immunity, and that plaintiffs were not deprived of a protected property interest. Accord-

ingly, defendants' motion to dismiss is granted.

## I. FACTS

The facts can be stated succinctly. Plaintiffs are bailiffs of the District Court for the 36th Judicial District for the State of Michigan. M.C.L.A. § 600.8322(1) provides that "[a] bailiff shall hold office until death, retirement, resignation, or removal from office by the court for misfeasance or malfeasance in office."

Plaintiffs' compensation is governed by M.C.L.A. § 600.8322(6), which specifies that full-time bailiffs shall receive an annual salary of $20,000, and part-time bailiffs shall receive a pro rata portion of this amount "based on that portion of a full-time bailiff's workload to be assigned to the bailiff." This salary is supplemented by fees that bailiffs charge for serving process. M.C.L.A. § 600.8322(6). Plaintiffs allege that this fee for service "resulted in an average payment in 1980 of $39,-000 to each Bailiff as well as a contribution to a pension plan." Plaintiff's Motion for a Preliminary Injunction, p. 2.

The dispute in this case centers on who is authorized to serve process. M.C.L.A. § 600.8321(1) provides that "[c]ivil process in the district court shall be served by a sheriff, deputy sheriff or a court officer appointed by the judges of the court for such purpose...." Subsection two adds that "[u]nder rules of the supreme court, any other person may serve any process or order of the district court which does not require the seizure, attachment or garnishment of property or the arrest of a person." M.C.L.A. § 600.8321(2). This statutory grant of authority to the Court to issue rules supplements the power conferred by Article 6, Section 5, of the Michigan Constitution: "The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state."

Prior to March 1, 1985, a Michigan District Court Rule, D.C.R. 103, specified that with the exception of service requiring seizure, attachment or garnishment of property, or arrest, "[p]rocess in civil actions may be served by any person under or pursuant to § 8321(1) of the Revised Judicature Act and by any other person of suitable age and discretion who is not a party nor an officer of a corporate party upon leave of court." This rule was superseded by the new Michigan Court Rules, which were promulgated by the Michigan Supreme Court and became effective on March 1, 1985. Rule 2.103 allows process in civil actions to be served "by any legally competent adult who is not a party or an officer of a corporate party" (again, with the exception of service involving seizure, attachment, garnishment or arrest). The only difference in the new rule that is relevant to this dispute is that *leave of court* is no longer required before legally competent adults can serve process.

Plaintiffs argue that this change has caused them great hardship. They allege that under D.C.R. 103, persons other than bailiffs were rarely authorized by courts to serve process. They further allege that because leave of court is no longer required, such persons now routinely serve process. According to plaintiffs, service of process by bailiffs has diminished over 95% and, presumably, there has been a corresponding decline in the fee-for-service portion of their compensation. I must assume that these allegations are true for purposes of this motion.

In this action, plaintiffs sue the State of Michigan, the State Judiciary Council and the individual Justices of the Michigan Supreme Court. Plaintiffs contend that they have a constitutionally protected property interest in serving process exclusively, and that by expanding the class of persons authorized to serve process the new rules deprive them of this property interest. Plaintiffs ask that Rule 2.103 be declared unconstitutional and that defendants be enjoined from enforcing it.

## II. DISCUSSION

A. *Eleventh Amendment Immunity of the State and State Judiciary Council*

█ It is well established that the Eleventh Amendment immunizes the State and

its agencies from a suit for declaratory or injunctive relief unless the State "has consented to the filing of such a suit." *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978). Plaintiffs accept this as the general rule, but argue that the State has consented to this suit. Plaintiffs bear a heavy burden in advancing this claim, for waiver of Eleventh Amendment immunity will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)).

■ Plaintiffs suggest that the State's consent to suit in federal court may be found in M.C.L.A. §§ 600.6419(1), 600.6440. Section 600.6419(1) states that "[e]xcept as provided in section 6440, the jurisdiction of the court of claims as conferred upon it by this chapter over claims and demands against the state or any of its departments, commissions, boards, institutions, arms or agencies shall be exclusive...." Section 600.6440 provides that "[n]o claimant may be permitted to file claim in said court against the state nor any department, commission, board, institution, arm or agency thereof who has an adequate remedy upon his claim in the federal courts...."

The very argument now advanced by plaintiffs was considered and rejected by the United States Court of Appeals for the Sixth Circuit in *Copper S.S. Co. v. State of Michigan*, 194 F.2d 465 (6th Cir.1952). The Court held that "there was no intention in creating the Court of Claims to enlarge or extend the existing jurisdiction of the federal courts over the State or any of its departments, commissions or agencies." 194 F.2d at 468.

Plaintiffs assert that the decision in *Oliver v. Kalamazoo Board of Education*, 73 F.R.D. 30 (W.D.Mich.1976), *rev'd on other grounds*, 576 F.2d 714 (6th Cir.1978), supports their position. While the Court in *Oliver* did find a waiver of sovereign immunity, that waiver was inferred from M.C.L.A. § 388.1007, which explicitly authorized suits against the State Board of Education. The Court did *not* hold that M.C.L.A. § 600.6440 waived the State's sovereign immunity; it merely indicated that this statute did not conflict with the explicit waiver in M.C.L.A. § 388.1007. In light of the Court's conclusion that M.C.L.A. § 600.6440 was "totally irrelevant" to the suit before it, 73 F.R.D. at 36, the *Oliver* case obviously does not support plaintiffs' contention.

■ Alternatively, plaintiffs argue that waiver may be found in State constitutional and statutory provisions authorizing courts to determine just compensation when private property is taken for a public use. MICH. Const. Art. 10 § 2; M.C.L.A. §§ 213.51–213.75. At most, these provisions might waive immunity in suits in which there is a property interest and that interest is converted to a public use—conditions that are not present here.[1] Furthermore, the ambiguity of the State's "consent" is increased by the fact that the provisions relied on by plaintiffs do not expressly authorize *federal* court actions.

■ In sum, I cannot find in these provisions the "express language" or "overwhelming implication" that *Edelman* indicates are prerequisites to a State's waiver of Eleventh Amendment immunity. I therefore conclude that the State of Michigan and the State Judiciary Council are protected from suit by their sovereign immunity and the claims against them must be dismissed.

### B. *Legislative Immunity of the Individual Justices*

Defendants argue that the remaining defendants, the individual Supreme Court Justices, are protected from suit by legislative immunity. A similar claim was considered in *Supreme Court of Virginia v.*

---

1. The reasons that plaintiffs do not have a cognizable "property interest" are explained *infra*.

*Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), where a plaintiff attempted to enjoin Virginia Supreme Court Justices from enforcing a disciplinary rule against attorney advertising. The United States Supreme Court held that because the Justices claimed inherent power to regulate the Bar and were "exercising the State's entire legislative power with respect to regulating the Bar, ... its members are the State's legislators for the purpose of issuing the Bar Code. Thus the Virginia Court and its members are immune from suit when acting in their legislative capacity." 446 U.S. at 734, 100 S.Ct. at 1976. More specifically, the Court indicated that "[i]f the sole basis for [plaintiffs'] § 1983 action against the Virginia Court and its chief justice were the issuance of, or failure to amend, the challenged rules, legislative immunity would foreclose suit against [the defendants]." 446 U.S. at 734, 100 S.Ct. at 1976.

The Court went on to find, however, that the Justices were liable insofar as they were acting in their enforcement capacity, and left open the question of whether they could be sued for acts in their judicial capacity. The Court observed that the Justices had inherent authority to enforce the disciplinary rules as well as statutory authority to discipline, suspend and disbar attorneys. 446 U.S. at 737, 100 S.Ct. at 1977. Based on this enforcement authority, the Court concluded that "the Virginia Court and its members were proper defendants in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies were." 446 U.S. at 736, 100 S.Ct. at 1977 (footnote omitted).

■ It is evident that in promulgating the rule in dispute here the Justices were acting in a legislative capacity. The Justices acted pursuant to their inherent authority to supervise the courts and the State Constitution's delegation of authority to enact rules governing practice and procedure. Hence, as in *Consumers Union*, the Justices "are the State's legislators" for purposes of adopting these rules. 446 U.S. at 734, 100 S.Ct. at 1976. *Consumers Union* clearly teaches that legislative immunity forecloses suit against the Justices for "the issuance of, or failure to amend, the challenged rules." 446 U.S. at 734, 100 S.Ct. at 1976.

Plaintiffs seek to avoid this bar by arguing that the Justices may be sued in their enforcement capacity. The plaintiffs have not, however, pointed to any acts of enforcement that the Justices have undertaken or may undertake at any time in the future. On the contrary, the rule at issue is permissive, not proscriptive; no enforcement is necessary for it to be effectuated. The only action required of the Justices was the formulation and issuance of the rule, and *Consumers Union* holds that this action is protected by legislative immunity.[2]

I conclude that plaintiffs have failed to allege any conduct by the individual defendants that would not fall within the cloak of legislative immunity. Accordingly, the claims against these defendants must also be dismissed.

### C. *Plaintiffs' Alleged "Property Interest"*

■ I turn finally to plaintiffs' claim that they have a protected property interest. Ordinarily I would not address this question, having already decided that the case must be dismissed on jurisdictional grounds. In this case, however, I am loath to dismiss this federal constitutional claim solely on the basis of what one might argue are close jurisdictional questions. To do so would force plaintiffs to seek judicial

---

**2.** This Court has repeatedly indicated its concern to plaintiffs that they were not suing the proper defendants. On March 11, 1985 plaintiffs were given leave to amend their complaint, but they failed to add any new defendants. Subsequently, the Court specifically asked the parties to submit briefs indicating whether the individual defendants have any enforcement powers that may be enjoined. Nevertheless, plaintiffs have neither added defendants who are more directly involved in the administration and execution of the rule, nor indicated what specific enforcement powers the Justices possess that are relevant to Rule 2.103 and may be exercised.

relief in the state courts, where their rights would be determined by the Michigan Supreme Court, a defendant in this action.[3] From a pragmatic point of view, the layman may be at a loss to understand the fairness of such a result. Consequently, in the unusual circumstances of this case, I think it is necessary to discuss the merits of plaintiffs' claims.[4]

The starting point in determining whether plaintiffs have a protected property interest is the analytical framework explained in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In *Roth*, the Supreme Court indicated that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it....
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

In this case, plaintiffs are not simply arguing that they have a property interest in their jobs as bailiffs, for no plaintiff has been discharged from this position. Instead, plaintiffs claim that by permitting other persons to serve process, the State effectively caused a substantial diminution in plaintiffs' position. Hence, the essence of plaintiffs' claim is that their property interest includes the right to serve process exclusively.

In predicating their case on such a claim, plaintiffs grasp at the thinnest of threads. Plaintiffs suggest that the sources of this right are M.C.L.A. § 600.8321 and D.C.R. 103, which preceded the new rule. The statute, however, explicitly authorizes the Supreme Court to adopt rules permitting any person to serve process, and D.C.R. 103 allowed any person of suitable age to serve process with leave of court.[5] Hence, if the entitlement asserted by plaintiffs is to be found, its source must be the requirement that persons other than bailiffs could serve process only with *leave of court:* this requirement is the only relevant difference between the old rule and the new rule.

It cannot seriously be thought that such a requirement gave plaintiffs an entitlement to serve process to the exclusion of all others. The "leave of court" requirement simply empowered a court to accommodate reasonably the interests of the parties to litigation as well as the judiciary's interests; there is no indication that it was intended for plaintiffs' benefit. *See Ash v. Board of Education*, 699 F.2d 822, 826 (6th Cir.1983). Nor did it constitute any sort of guarantee that others would not serve process; this decision was left to the discretion of the Court. In short, it clearly did not create the entitlement claimed by plaintiffs.[6]

---

3. In an earlier proceeding, I indicated my intention to abstain in this case, so that the issue of whether plaintiffs had a property interest under state law could be certified to the Michigan Supreme Court. I subsequently decided that this would be inappropriate for the pragmatic reason indicated in text, and also because resolution of the jurisdictional issues was required before a decision could be made on abstention.

4. There are additional reasons why consideration of plaintiffs' alleged property interest is warranted. First, the existence of this property interest is inextricably part of defendants' jurisdictional argument, *see* note 1 *supra*, and thus its resolution is required. Second, plaintiffs' claim to a property interest is arguably so insub-

stantial that it should be addressed as an independent jurisdictional basis for dismissal. *See Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776–77, 90 L.Ed. 939 (1946).

5. There are some additional limitations, but they are not relevant to this dispute.

6. Plaintiffs also suggest two other sources of the entitlement they claim. First, they point to M.C.L.A. § 600.8322(1), which provides that "[a]ll process issued by the district court in civil actions shall be rotated among the bailiffs pursuant to rules adopted by the court." It is apparent that the language "all process" in this provision refers to all process *that is served by bailiffs*, for § 600.8321(2) expressly permits

**693**

In support of this conclusion it should be added that even if the rules had only authorized plaintiffs to serve process, plaintiffs can point to no language even hinting that this was a right that would exist in perpetuity. On the contrary, the State Constitution permits the Supreme Court to modify, amend and simplify these rules as needed. *See Ash,* 699 F.2d at 826 (holding that statutory requirement that wages be specified in contract did "not contain any restrictions on the Board's right to adopt an amended school calendar with an attendant reduction in the teachers' salaries due to their participation in an illegal strike," and therefore did "not provide the plaintiffs with a protected property interest").

The Court is aware that the change in the court rules may cause a substantial hardship to plaintiffs and result in disappointed expectations. This, unfortunately, will often be the case when the legislature or the courts modify rules or regulations in a manner that diminishes, or even eliminates, the responsibilities of some individuals. But such individuals cannot find relief in ambiguous, discretionary, or impermanent statutory authorizations that do not remotely purport to create an entitlement. Instead, they must seek relief from the Legislature, or perhaps in this case the Michigan Supreme Court. To reiterate the teachings of *Roth:* "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. No such entitlement can be found in this case. The absence of a protected property interest independently warrants the dismissal of plaintiffs' complaint.

III. CONCLUSION

Defendants' motion to dismiss is granted. An appropriate order may be submitted.

some process to be served by persons other than bailiffs. This conclusion is dictated by the cardinal rule of statutory constructions that "[d]ifferent portions of the same statute should be read and interpreted consistently with each other, avoiding conflicts." *United States v. Stauffer Chemical Co.,* 684 F.2d 1174, 1186 (6th Cir. 1982); *aff'd,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984).

Plaintiffs have also made passing reference to their "understanding." However, plaintiffs point to no promises, representations or other facts that might support such an understanding. It is clear that a unilateral expectation is insufficient, and plaintiffs have made no specific allegations that would permit this Court to infer anything more than this.