**COLORADO SPRINGS PRODUCTION CREDIT ASSOCIATION, Monte Vista Production Credit Association, Sterling Production Credit Association, Production Credit Association of New Mexico, and Production Credit Association of South Central Kansas, Plaintiffs,**

v.

**FARM CREDIT ADMINISTRATION and Farm Credit System Capital Corporation, Defendants.**

**Civ. A. No. 86–K–1948.**

United States District Court, D. Colorado.

Aug. 16, 1987.

Thomas Seawell, Denver, Colo., Barton L. Enoch, John W. Suthers, Colorado Springs, Colo., for plaintiffs.

Lori E. Fields, Civ. Div., Dept. of Justice, Washington, D.C., Kathleen M. Mullarkey, Associate General Counsel, Farm Credit Admin., McLean, Va., Colleen Conlin, Asst. U.S. Atty., Denver, Colo., for Farm Credit Admin.

Miles M. Gersh, Gersh & Danielson, Denver, Colo., Sara Hays, P. John Owen, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for Farm Credit System Capital Corp.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

In this action, plaintiffs challenge the validity of certain regulations promulgated under the Farm Federal Credit Act of 1985. Plaintiff's also seek a declaration that portions of the act are unconstitutional. I

assume jurisdiction pursuant to 28 U.S.C. § 1331, 12 U.S.C. § 2151 as amended and 28 U.S.C. § 1332.

Plaintiffs are farm credit associations operating under 12 U.S.C. § 2091 *et seq.* They are members of the Farm Credit System as defined by 12 U.S.C. § 2002. Each is responsible for a considerable proportion of the agricultural financing in its own area.

In 1985 the farm credit system incurred a large nationwide loss. Congress responded to the inevitable problems arising from this crisis by enacting the Farm Federal Credit Act of 1985. This sought to ease the plight of those credit associations bearing the brunt of this loss by providing for U.S. government aid. Such government aid, however, would only issue following the imposition of a 'self help' program. It is this scheme which forms the basis of the instant challenge.

The kernel of the program involved the compulsory transfer of funds from stronger associations—such as plaintiffs—to the weaker bodies. To this end, Congress directed first defendant, the federal agency charged with regulating the Farm Credit System, to charter second defendant. This body was empowered to execute the projected transfer of funds by requiring stronger credit associations to purchase second defendant's stock or obligations. Resulting proceeds were then to be channelled to distressed system institutions.

First defendant then issued Capital Directive no. 1 which prevented stronger credit associations from incurring certain expenses, making certain transfers and declaring dividend payments until governing regulations were fully published in their final form at 12 C.F.R. § 611.40.

Plaintiffs present five basic claims for relief. They maintain the regulations were promulgated in violation of the process mandated by the Administrative Procedure Act. They claim Capital Directive no. 1 was promulgated in violation of the Administrative Procedure Act. They claim the regulations contravened the dictates of the 1985 Act under which they were purportedly drafted. They claim the 1985 Act and its appurtenant regulations contravened their 5th Amendment rights. They claim the 1985 Act and the regulations promulgated thereunder were enacted in violation of their 14th Amendment due process rights.

The case is now before me on three motions. Both defendants have filed motions for summary judgment. Plaintiffs have filed a cross motion for summary judgment.

Plaintiffs motion is granted.

In fact, this case has boiled down to one issue which has hardly been addressed at all by either party.

In *Federal Land Bank of Springfield, et al. v. Farm Credit Administration,* et al, Slip Op. No. 86–214–F, (D.Mass. Feb. 17, 1987) [Available on WESTLAW, DCT database] the United States District Court for the District of Massachusetts declared the regulations in question here contrary to the terms of both the Farm Credit Act and the Administrative Procedure Act. *Prima facie,* therefore, defendants are collaterally estopped from relitigating these identical issues before this court, *Parklane Hosiery Co. v. Shore* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

■ The application of the doctrine of collateral estoppel, however, has been complicated somewhat by the decision of the Supreme Court in *United States v. Mendoza* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) in which the court dictated that non-mutual offensive collateral estoppel, such as is in issue here

simply does not apply against the Government in such a way as to preclude relitigation of issues such as those involved in this case.

464 U.S. 154, 162, 104 S.Ct. 568, 573.

A brief consideration of those cases since *Mendoza* in which lower courts have had to struggle with this 'simple' proposition of law indicates both the destabilizing effect it has had on the equilibrium between government and non-government litigants along with the virtual impossibility of firstly determining the exact parameters of the *Mendoza* doctrine and secondly actually ap-

plying the rule to practical situations as they arise before a court.

Lord Mansfield noted as early as 1770 the obligation incumbent upon courts to "act alike in all cases of like nature", *R. v. Wilkes,* 98 Eng.Rep. 327, 335 (1770), a principle defined by Judge Henry Friendly as "the most basic principle of jurisprudence", *Indiscretion about Discretion,* 31 Emory L.J. 747, 758 (1982). This dictate is expressed in our legal system through both the doctrines of precedent and the closely related doctrines of *res judicata* and collateral estoppel. This latter body of rules in turn perform a crucial role in the federal system of government, serving to

> relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.

*Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

As one might expect, the wide range of policies underlying these doctrines has resulted in a flexible approach by the courts to their application, *Montana v. United States,* 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979) and see Restatement (2nd) of Judgments §§ 27–28 (1982). It was this inherent sense of elasticity which provided the Supreme Court with the basis for its decision in *Mendoza.*

The plaintiff in *Mendoza* was a Filipino national who filed a naturalization petition under the terms of a statute which had expired in 1946. He asserted he had been denied due process by the government's implementation of that statute in that naturalizations in the Phillipines had been halted for a nine month period beginning in October 1945. The same due process issue had been litigated and decided against the government in the earlier decision of *In re Naturalization of 68 Filipino War Veterans* 406 F.Supp. 931 (N.D.Cal.1975). Plaintiff sought to invoke offensively the doctrine of non-mutual collateral estoppel.

In deciding the doctrine could not be invoked against the United States, the Supreme Court posited a number of distinct arguments. It felt the application of non-

mutual collateral estoppel against the government would "substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue", *Mendoza* 464 U.S. at 160, 104 S.Ct. at 572, 78 L.Ed.2d at 385. Routine application of the doctrine would force the Supreme Court to revise its practice of waiting for a conflict to develop between circuits before granting government petitions for certiorari, *ibid* 464 U.S. at 160, 104 S.Ct. at 572, 78 L.Ed.2d at 385. Furthermore, the Court pointed out that such a course would force the Solicitor General to consider appealing every adverse decision in order to foreclose further review, thereby abandoning his present policy of considering government resources and court dockets before appealing. Finally, the court pointed out the problems inherent in expanding the doctrine of collateral estoppel in the face of differing administration's approaches to policy choices.

One court has remarked of *Mendoza* in the following terms

> However, the scope of *Mendoza* is uncertain. The Supreme Court summarized its holding as follows: "nonmutual offensive collateral estoppel simply does not apply against the government in such a way as to preclude relitigation of issues *such as those involved in this case." Id.* at 574. (Emphasis added). Courts and commentators are uncertain about the implications of these last words.

*Stormont-Vail Regional Medical Center v. Bowen,* 645 F.Supp. 182, 1192 (D.D.C.1986)

While the matter does not appear to have been conclusively resolved by any court, there is a substantial body of opinion which holds the rule posited in *Mendoza* is not an absolute one. In *Allstate Insurance Co. v. Adana Mortg. Bankers* 725 F.2d 1324, 1326 (11th Cir.1984) the rationale of Mendoza was described as being that

> the doctrines of 'estoppel' cannot be mechanically invoked against the government *without appropriate consideration of important policy considerations.*

Emphasis added.

*Blais v. Bowen* 629 F.Supp. 543, 545 (D.Mass.1986) is to the same effect and see also *Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction* § 4465, Levin and Leeson, *Issue Preclusion Against the United States Government,* 70 Iowa L.J. 113 (1984), Note; *Collateral Estoppel and Nonacquiescence: Precluding Government Relitigation in the Pursuit of Litigant Equality,* 99 Harv. L.Rev. 847, but see *contra Sun Towers Inc. v. Heckler* 725 F.2d 315, 323 n. 8 (5th Cir.1984). I agree with the view that *Mendoza* does not posit an absolute rule excluding the use of nonmutual offensive collateral estoppel against the government.

In so concluding, I pay special attention to the specific wording of the court's decision. The court particularly pointed out that nonmutual collateral estoppel would not apply against the government as to *issues such as those involved in that case.* That such a qualification was intended is clear from the fact that it appears throughout the opinion *id.,* 446 U.S. at 570–72, 104 S.Ct. at 156, 160, 78 L.Ed.2d at 382, 385. The court did not simply posit that the government was in a unique position in any litigation and base its decision on that point alone. Instead four distinct policy justifications were forwarded, as outlined above. These considerations will not apply in all cases in which the government is involved. Clearly there are contexts within which the government litigates just as an ordinary citizen, contexts within which no conceivable political issue or administration policy is at stake, contexts within which the failure to accord full effect to the first, final decision on a point of law does not freeze the development of that issue but rather destabilizes and undermines such development assisting confusion instead of evolution, or contexts within which the issue of appeal

will not tax excessively government resources.

Those cases which arise and are not governed by these considerations simply fall outside the ambit of the decision. Further, the court has made clear its view against the overall backdrop of the doctrine of estoppel generally that regarding government exemption from its scope, there are no absolutes:

> [I]t is unnecessary to decide this case, to say that there are *no* cases in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor and reliability in their dealings with the Government.

*Heckler v. Community Health Serv.* 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224–25, 81 L.Ed.2d 42.

Finally, placing the holding in *Mendoza* within the general framework of the doctrine of collateral estoppel and considering the inherent flexibility which has historically characterized the application of that doctrine in our courts leads me to doubt that the Court intended to dictate any such rigid exclusion of nonmutual offensive collateral estoppel.

■ The issue in this case involves a discrete question of administrative law, with no fact variation between it and the prior case in the federal district court in Massachusetts. The parties to the prior adjudication and those to this case are not in privity with each other but are closely related, represent the same substantial interests and operate under the exact same statutory framework[1]. The instant situation is accordingly immediately distinguishable from that arising in *Mendoza,* which involved a question of constitutional law[2],

---

**1.** The Supreme Court made perfectly clear its view in *United States v. Stauffer Chemical Co.,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984), a decision handed down on the same day as *Mendoza,* that the rationale of the latter case did not apply where there existed a mutuality of parties. This exception was regarded as performing such a crucial function that a reservation to that effect was explicitly posited in

*Mendoza* itself. Here we are dealing with parties although distinct legal personalities, who are each operating and structured within the terms of one self contained statutory scheme. On this basis alone, *Mendoza* is distinguished.

**2.** In this context, but without so deciding, I am impressed by the argument that *Mendoza* should be restricted to constitutional determinations. It is in such litigation that the policy considera-

with two cases brought by distinct and unrelated individuals and resultant fact variations.

I refuse to accept a notion that the Supreme Court intended in *Mendoza* to inconvenience litigants, abrogate further than absolutely necessary the principle of litigant equality [3] or burden the federal court system any further by demanding that the courts should adjudicate twice upon a question of this nature. As one commentator has put it

> a court might be more reluctant to preclude relitigation of constitutional issues and more likely to bind certain federal agencies on matters of national administrative law.

99 Harv.L.Rev. 847, 860.

I accordingly hold defendants in the instant suit to be collaterally estopped from relitigating those issues resolved by the United States District Court for the District of Massachusetts in *Federal Bank of Springfield, et al. v. Farm Credit Administration* et al. This precludes determination of the validity of the regulations under the Administrative Procedure Act and the Farm Credit acts. Furthermore, the constitutional issues raised herein are mooted. Plaintiffs' motion for summary judgment is granted.

It is ORDERED plaintiffs' motion for summary judgment is granted.

---

tions already outlined above assume their most potent function. It is also in such litigation that the United States operates as a truly unique litigant. In fact the theoretical and practical attractions of such a rule were noted long before the decision in *Mendoza*, Vestal, *Relitigation by Federal Agencies: Conflict, Concurrence and Synthesis of Judicial Policies*, 55 N.C.L. Rev. 123, 178 (1977). To this end, it is significant that the court emphasized the fact the case before it involved an issue of constitutional law, *Mendoza*, 446 U.S. at 160, 104 S.Ct. at 572, 78 L.Ed.2d at 385.

**3.** There is a further problem which has not been addressed in any of the decisions unearthed in the course of my research. The Court throughout *Mendoza* made clear that its decision in that case applied only in the context of those actions taken by or against the government. Yet nowhere in the course of its opinion is the scope of this term defined. I do not here imply I believe defendants here necessarily fall within its scope. The distinctions among purely governmental functions, proprietary functions and corporate entities created by government are obviously relevant to an adequate analysis of the problem.