**INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA, et al., Plaintiffs,**

**v.**

**Bruce BABBITT, et al., Defendants.**

**SAMEDAN OIL CORPORATION, Plaintiff,**

**v.**

**Ada E. DEER, et al., Defendants.**

**Civil Action Nos. 93–2544 (RCL), 94–2123 (RCL).**

United States District Court, District of Columbia.

July 25, 1997.

L. Poe Leggette, Thad S. Huffman, Jackson & Kelly, Washington, DC, for Plaintiffs.

Michael Reed, Asst. Chief (Trial Atty.), Dept. of Justice, Environ. and Nat. Resources Div., Gen. Lit. Section, Washington, DC, Lisa K. Hemmer, Dept. of Interior, Office of Solicitor, Washington, DC, for Defendants.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on plaintiff Independent Petroleum Association of America *et al.* ("IPAA") and Samedan Oil Corporation's ("Samedan") motion for entry of order implementing mandate of the court of appeals, defendants' motion for entry of order implementing mandate of the court of appeals, and Samedan's motion for entry of permanent injunctive relief. For the reasons stated below, IPAA's motion for entry of order will be denied, and its case dismissed. Samedan's motion for entry of order will be granted in part and denied in part, and defendants' motion will be granted in part and denied in part. Samedan's motion for entry of a permanent injunction will be granted, in accordance with the opinion below.

## BACKGROUND

This contentious litigation began in West Virginia in 1993, when IPAA, a large trade association of petroleum businesses and organizations, and others, filed suit against the government after the Department of the Interior ("DOI") altered its policies as to the way in which it planned to collect royalties on natural gas take-or-pay settlements—as discussed at length in *IPAA v. Babbitt*, 92 F.3d 1248 (D.C.Cir.1996). The case was transferred to the United States District Court for the District of Columbia, and through an agreement between oil companies and the government, a specified number of companies were ordered to pay royalties on the natural gas payments in question as a mechanism to test the validity of the department's new "rule" on nonrecoupable take-or-pay settlement payments. A payment involving Samedan Oil Corporation served as one of these test cases, and Samedan was assessed $20,000 in royalties. Samedan filed suit.

The district court upheld the government's new policy—not as a rulemaking, but as an interpretation of an existing rule, to which courts must give due deference. The United States Court of Appeals for the District of Columbia Circuit reversed, finding DOI's decision to assess royalties on nonrecoupable take-or-pay payments to be the result of its arbitrary and capricious reading of its own rules, as will be discussed in further detail below. Now, the parties have come back before this court seeking to implement the court of appeals' mandate. What exactly this entails raises serious questions about the scope and extent of the circuit's decision in *IPAA*.

At its most basic level, IPAA and Samedan simply seek to have the court of appeals' decision apply to them. But this would preclude the government from collecting royalties on nonrecoupable take-or-pay settlements on federal and Indian oil and gas leases—covering a large percentage of the natural gas industry and having nationwide effect. In addition to relief from actual payments, plaintiffs further seek to enjoin DOI from requiring companies to prepare reports, post sureties, etc. in connection with claims by the government for royalties on nonrecoupable take-or-pay settlements.

The government, fearing a broad gutting of its practices with respect to its assessment of royalties on these settlement payments, essentially seeks to exclude IPAA from the appellate decision in *IPAA*, limiting the reach of the decision solely to Samedan. DOI argues that relief should be granted only to this single oil company, and only within this single circuit. To this end, the government has mounted a multi-front attack against IPAA's claims. First, it argues that IPAA never properly invoked jurisdiction before the court in either its or Samedan's case, and is entitled only to dismissal with prejudice of its claim that the agency engaged in an improper rulemaking, now that the courts have ruled DOI's royalty policy does not rise to the level of reviewable final agency action. Second, DOI argues that even if IPAA could claim an entitlement to additional relief, standing and collateral estoppel questions which would arise in its quest for nationwide relief cannot be determined on the record presently before this court. Third, the government argues the proposed relief exceeds and conflicts with the decision of the court of appeals in *IPAA*. Finally, with respect to plaintiff Samedan, the government objects to any grant of relief or summary judgment other than setting aside the overturned order that it pay $20,000 in royalties.

## DISCUSSION

### A. RELIEF AVAILABLE TO IPAA

*Does IPAA have any issues before the court?*

The government argues that IPAA challenged only a May 3, 1993 letter by the Associate Director of the Minerals Management Service ("MMS") setting forth a policy on how MMS auditors should proceed to audit gas contract settlement payments received by lessees of federal and Indian oil and gas leases. Def.'s Mot. for Entry of Def.'s Order, March 24, 1997, at 1. By agreement of the parties, a procedure was established to bring test cases for judicial review to determine the validity of the new policy. DOI levied a royalty fee against Samedan pursuant to the new policy as set forth in the

May 3 letter, which Samedan then challenged.

Three issues were brought before the district court: (1) whether the May 3, 1993 letter constituted a rulemaking subject to APA notice-and-comment requirements; (2) what the appropriate standard was for reviewing the Assistant Secretary for Indian Affairs'—Ada E. Deer's—decision on September 16, 1994 to uphold the MMS policy as outlined in the May 3 letter; and (3) whether her decision could survive that standard. This court determined that (1) the May 3 letter was not an agency statement with binding effect, but that Deer's decision to apply the policies contained within that letter was entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Given that deference, (2) the interpretation need be only reasonable and consistent with regulations or governing statutes. *Nuclear Information Resource Serv. v. NRC,* 969 F.2d 1169, 1173 (D.C.Cir.1992). Finally, (3) Deer's decision to interpret "gross proceeds" as a result of natural gas drilling over which royalty payments may be taxed as inclusive of nonrecoupable take-or-pay settlements satisfied that interpretive standard. *IPAA,* 1995 WL 431305 at *12.

The court of appeals reversed. In doing so, however, it agreed that the May 3 letter did not constitute a rulemaking, and therefore had no binding effect. *IPAA,* 92 F.3d at 1256. The court of appeals continued, though, that Deer's decision to assess royalty payments against Samedan did not constitute an internal interpretation of department regulations, but rather served as an interpretation of the Fifth Circuit's decision in *Diamond Shamrock Exploration Co. v. Hodel,* 853 F.2d 1159 (5th Cir.1988), a decision which the agency had agreed to be bound by through its regulations. Revision of Gross Proceeds Definition in Oil and Gas Valuation Regulations, 53 Fed.Reg. 45,082, 45,083 (Nov. 8, 1988); *IPAA,* 92 F.3d at 1257. The court of appeals examined the question in this light, ultimately determining that the September 16, 1994 decision of Assistant Secretary Deer upholding the agency's December

2, 1993 order that Samedan pay royalties was arbitrary and capricious "in light of DOI's adoption of the *Diamond Shamrock* holding." *IPAA,* 92 F.3d at 1260. The court then pronounced that "[n]either take-or-pay settlement payments are royalty bearing unless and until they are credited toward the purchase of make-up gas." *Id.*

The government strenuously argues that IPAA joined in Samedan's case only insofar as a ruling determining the status of the May 3, 1993 letter was concerned. As the government states, "[t]he only matter with respect to which the IPAA association plaintiffs had sought to invoke the [c]ourt's jurisdiction in its case—the May 3 letter—is not 'final agency action.' The necessary consequence of that determination by the court of appeals is that the associations are entitled to no relief, because their challenge was rejected." Def.'s Mem. in Supp. of Def.'s Mot. for Entry of Def.'s Order, at 2. In other words, the government argues that IPAA and its collective members had a case, and it has been decided: they lost.

What, in fact, is the extent of IPAA's role in both civil action no. 93–2544—the complaint transferred from West Virginia, and civil action 94–2123, the case filed by Samedan Oil, both of which were eventually consolidated?

*1. Scope of IPAA's Challenge*

IPAA's complaint, filed August 13, 1993 (and later amended) in the United States District Court for the Northern District of West Virginia, contains numerous allegations. Contrary to the government's assertions, IPAA went much further than merely challenging the May 3, 1993 letter. IPAA, in paragraph 4 of its complaint, sought a declaration that royalties are not owed on nonrecoupable natural gas contract settlement payments. Comp., at 3. In IPAA's first cause of action, plaintiffs sought a ruling that those payments were not part of the gross proceeds which lessees received from the disposition of natural gas from the leases, and that the government's efforts to collect royalties on these sums violated federal statutes. Id. at 18. It is only in IPAA's second cause of action that it explicitly chal-

lenges the May 3 letter as the adoption of a new rule. It also challenged a June 18, 1993 order by DOI that would require royalty payors to provide information to MMS regarding gas contract settlements.

The government contends, however, that by agreement of the parties, IPAA dropped its request for a preliminary injunction in exchange for an alteration of the June order, deciding to challenge only the May 3 letter and nothing more. But this is not borne out by the facts of the case. On February 9, 1994, this court granted IPAA's motion to withdraw the preliminary injunction it moved for on August 27, 1993. Plaintiffs' unopposed motion stated that based on the development of "interim procedures" between the parties which substantially addressed the element of "irreparable harm," which IPAA originally feared, the need for a preliminary injunction was obviated. Pl.'s Unopp. Mot. for Leave to Wdraw. Mot. for Prelim. Inj., Feb. 8, 1994, at 1–2. The government believes that this leaves as the only basis for a challenge the May 3 letter.

But in the face of IPAA's wide-ranging pending complaint and its request for declaratory relief, it is clear that IPAA intended to challenge far more than just the May 3 letter. This is especially true in light of its consolidation with Samedan's suit. Obviously, IPAA could not do as an entire group what Samedan could later do—that is, attack a specific assessment—because specific royalty assessments had not yet been handed down. Only Samedan was asked to cough up money at that point, and this was done as a test case. But IPAA certainly maintained an interest that the courts declare that royalties are not owed on nonrecoupable settlements, and it pursued that interest. It never dismissed its complaint.

 Yet, the government contends that IPAA should have sought to be a party in the *Samedan* case if it wanted to have its interests adjudicated with Samedan's. *See* Def.'s Mem. in Supp. of Def.'s Mot. for Entry of

Def.'s Order at 7. Indeed, it runs counter to the notion of a "test case" to believe that the vast number of IPAA members and others were actually parties to Samedan Oil's case. Presumably, a test case is brought to reduce the complexities of widespread litigation, not proliferate them by adding all sorts of standing and jurisdictional issues multiparty litigation must address. As the government argues, the purpose of such a test is to apply real facts to a real party using a new promulgation. The cases here were consolidated, but this does not itself create a unified party status. See, e.g. *Brown v. Francis*, 75 F.3d 860, 866 (3d Cir.1996) (finding that "[n]either consolidation with a jurisdictionally proper case nor an agreement by the parties can cure a case's jurisdictional infirmities"); *General Contracting & Trading Co., L.L.C. v. Interpole, Inc.*, 940 F.2d 20, 24 (1st Cir.1991)(stating that although two cases may be consolidated for purposes of convenience and judicial economy, they retain their separate identities).

 Thus, while there are no indications that IPAA dropped its general challenge to the authority of DOI to charge a particular type of royalty, it is equally clear, however, that IPAA cannot be considered a true party to Samedan's case, but must stand or fall on its own. The court must now decide whether IPAA has jurisdiction to mount the broad-based challenge to the government's royalty policy it has sought to do.[1]

### 2. Jurisdiction over IPAA

The government's strongest, and most difficult contention, is that regardless of what IPAA believed it was challenging, intended to challenge, or in fact did challenge, this court only had *jurisdiction* to hear a challenge to the May 3 letter. That is, despite IPAA's claims for wide declaratory and injunctive relief, it may only challenge the agency on a "final agency action" pursuant to § 704 of the Administrative Procedure Act ("APA"). This was alleged to be the May 3

---

1. IPAA cannot claim the expansionist relief this court granted in *Blue Cross and Blue Shield Assoc. v. Shalala*, 1996 WL 636131 (D.D.C.) because in that case, this court stated that "[w]here necessary to give prevailing parties the relief to which they are entitled, courts may issue injunctions that benefit persons who are not parties to a suit." [Citations omitted]. Here, Samedan could obtain complete relief without affording any to IPAA.

letter. 5 U.S.C. § 704. The government argues that once the courts ruled the May 3 letter did not constitute final agency action in this case, IPAA had no jurisdictional basis on which to sue. *See,* Def.'s Reply to Pl.'s Opp. to Def.'s Mot. for Entry of Def.'s Order, at 4–5.

By contrast, IPAA argues (1) the government's failure to raise a finality defense until now has effectively waived its ability to argue this point; (2) the government's waiver of immunity is not based solely on § 704 of the APA but rather § 702, which does not require finality; (3) because it is clear that DOI will continue to enforce a policy of charging royalties on nonrecoupable take-or-pay settlements despite the lack of a formal rule, it would be futile for IPAA to mount administrative challenges, so finality should not be required.

There were two allegedly "final" actions at issue in this consolidated matter: first, the May 3 letter outlining DOI's policy on nonrecoupable take-or-pay payments and settlements, which was directed to all companies making such payments; and second, the department's December 2 decision to implement the policies contained in the May 3 letter and charge a fixed royalty sum against the Samedan corporation—a decision affecting Samedan alone.

The government argues that because both the district and appellate court agreed that the May 3 letter is in no way a "rule" and has no binding effect, IPAA is faced with no final agency action to contest. Therefore, DOI says IPAA's case should be dismissed with prejudice.

▮▮▮ Absent an independent provision for review, the APA permits review only of final agency action. *Public Citizen v. Office of the U.S. Trade Reps.,* 970 F.2d 916, 918 (D.C.Cir.1992). And furthermore, as will be discussed in greater detail below, finality is a jurisdictional requirement. *See, e.g., DRG Funding Corp. v. Sec. of Housing and Urban Dev.,* 76 F.3d 1212, 1214 (D.C.Cir.1996) (stating that the requirement of a final agency action "has been considered jurisdictional," and if the agency action is not final, "the court therefore cannot reach the merits of the dispute."). If IPAA can be considered to have any challenge left in this case, it must have attacked something besides the May 3 letter, or there must be some finality with respect to the agency's decision independent of that letter.[2]

The only credible argument IPAA advances suggesting that there is finality with respect to its case is its assertion that DOI has decided, despite the lack of any formal rule, to continue a policy of assessing royalties against nonrecoupable take-or-pay payments or settlements. As IPAA writes, "[a]fter Assistant Secretary Deer's opinion in Samedan, which adopted,in full the rationale set forth in the MMS May 3, 1993 letter, there could be no doubt that the Department of Interior would continue to assert the same position in all of MMS's disputes with IPAA member companies regarding royalty on take-or-pay settlement monies." IPAA Surr., June 16, 1997 at 5. Thus, IPAA argues, it would be futile for it to go through the administrative process time after time given a stubborn insistence on the part of DOI to apply this policy. The take-or-pay policy should therefore be treated as a final decision by the agency for purposes of judicial review, IPAA argues.

### 3. *Final Agency Action*

▮▮▮ When a party wishes to challenge an agency policy or practice in the courts, a party may seek judicial review under § 10(a) of the APA, which provides that a person suffering legal wrong because of "agency action", or who is adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. *See,* 5 U.S.C. § 702. When the review sought is not pursuant to specific authorization in a substantive statute but

---

**2.** This is why IPAA's waiver argument must fail. Jurisdiction cannot be cast aside simply because plaintiffs believe this argument should have been raised earlier. Rather, it is a necessary condition for adjudication, regardless of when raised. At any rate, it does not appear that the government "sat" on this issue, because it could not have known conclusively until the court of appeals' ruling was issued, whether or not the May 3 letter would be considered final agency action. After this occurred, the government was free to argue the court's lack of jurisdiction.

only under the general review provisions of the APA, the "agency action" in question must be "final agency action." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 881–84, 110 S.Ct. 3177, 3185–86, 111 L.Ed.2d 695. Though plaintiffs have alleged in their complaint that DOI's policy on take-or-pay royalties violates several statutes, the only relevant basis for review appears to be under the APA, which provided the basis for review the last time the court of appeals had this case. Therefore, under *Lujan,* final agency action is required before IPAA may seek judicial review.

■ The purpose of this finality requirement is to prevent the disruption of the orderly administrative process through avoidance of premature judicial intervention until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *Eastman Kodak Co. v. Mossinghoff,* 704 F.2d 1319, 1322 (4th Cir.1983). Put another way, "[t]he relevant considerations in determining finality are whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from agency action." *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970).

■ The question of finality thus "seeks to distinguish a tentative agency position from a situation where the 'agency views its deliberative process as sufficiently final to demand compliance with its announced position.'" *Natural Resources Defense Council, Inc. v. E.P.A.,* 22 F.3d 1125, 1132–33 (D.C.Cir.1994) *citing Ciba–Geigy Corp. v. EPA,* 801 F.2d 430, 435–36 (D.C.Cir.1986); *see also, Sabella v. United States,* 863 F.Supp. 1, 3 (D.D.C.1994). DOI would have this court conclude that the May 3 letter fell

short of this, and in the absence of such finality, IPAA's case simply cannot proceed.

■ The intractable difficulty, however, is that if the court accepts the government's argument that the May 3 letter provides no final agency action even today, what is to prevent the government from unrepentantly applying this policy—already held irrational in *IPAA—as if it were* a final agency action? [3] Indeed, the government's briefing in this case is nothing short of defiant in illustrating the agency's plans to continue collecting royalties on take-or-pay settlements. For this reason, plaintiffs argue there is no reason to wait for adjudications to take place; we know what the government plans to do, and it would be exasperatingly futile to force hundreds upon hundreds of companies to engage in costly battles with the government where: but one result is possible. This is especially true when that one result has been held illegal.

This is a very difficult question for the court to resolve, as it trudges into murky legal waters, where doctrines of jurisdiction, finality, ripeness, and exhaustion overlap.

■ The elementary inquiry is, "can futility create finality?" Unfortunately for plaintiffs, futility of administrative review is not—legally speaking—a concept which relates to finality, but is coupled instead with the doctrine of exhaustion. If it would be futile to continue to seek administrative review of an agency's decision, this may satisfy an exhaustion prerequisite to judicial review, but not, it seems, the finality prerequisite for jurisdiction. The Ninth Circuit has held that these concepts can be joined, and that futility of administrative review can provide finality. *See, Air One Helicopters, Inc. v. FAA,* 86 F.3d 880, 882 (9th Cir.1996) (stating that "it is a common rule of judicial economy that we will not require a party to exhaust administrative procedures when exhaustion would be futile. . . . Accordingly, we will treat [the

---

**3.** "An agency may not, for example avoid judicial review merely by choosing the form of a letter to express its definitive position on a general question of statutory interpretation'" *Natural Resources Defense Council, Inc. v. EPA,* 22 F.3d 1125, 1132–33 (D.C.Cir.1994). Thus, the relevant issue is not, as the government has indicated, that there is no finality because the May 3 letter was deemed not binding in the past, but whether the agency has embarked on a plan implementing that policy in a way which would create finality without a formal rule.

agency's position] as final agency action.")[4] While this approach ostensibly makes common sense, the court is unconvinced that this approach is consistent with the law of the D.C. Circuit. This is because doctrinally speaking, finality, though it may often coincide with issues such as exhaustion, is fundamentally distinct.[5]

■■■■ As discussed in *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731 (D.C.Cir.1987), if an agency proceeding is still at an early stage and the party seeking review has the right to administrative review, a court may decline review for failure to exhaust administrative remedies. "Judicial intervention may not be necessary because the agency can correct any initial errors at subsequent stages of the process; moreover, the agency's position on important issues of fact and law may not be fully crystallized or adopted in final form." *Id.* at 735 (Edwards, J.) *citing* E. Gellhorn & B. Boyer, *Administrative Law and Process* 316–19 (1981). As Judge Williams succinctly noted, "exhaustion is directed to the steps a litigant must take, finality looks to the conclusion of activity by the agency." *Ticor*, 814 F.2d at 746. Thus, in some circumstances it may be proper to allow a party to side-step administrative processes because they merely cause delay or result in an inevitable conclusion. But whether the agency may be deposed from its own province of adjudication is a separate question. Congress gave agencies dominion to make rulings or adjudications free from judicial interference until there is final agency action. This cannot be side-stepped.

■■■■ Judge Williams spotted this very difficulty in *Ticor* by noting that "while exhaustion and ripeness are judge-made prudential doctrines, finality is, where applicable, a jurisdictional requirement." 814 F.2d at 746 (citations omitted)(emphasis in original). Though even Judge Williams would allow for review of nonfinal agency action in "the most exceptional circumstances," this is inapplicable to IPAA's situation.[6]

■■■■ Finality must then result from something other than the futility of administrative review. As explained in *DRG Funding*, an agency action may be deemed final if it is sufficiently direct and immediate and has a direct effect on day-to-day business. 76 F.3d at 1214, *citing Abbott Laboratories v. Gardner*, 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967). Futility arguments aside, the agency's actions have not reached this threshold. Rather, it appears that the May 3 policy "does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action,"—the very definition of "nonfinal" agency action. *DRG Funding*, 76 F.3d at 1214, *citing Rochester Tel. Corp. v. U.S.*, 307 U.S. 125, 130, 59 S.Ct. 754, 757, 83 L.Ed. 1147 (1939).

The court does note that if futility did constitute a viable exception to finality under the APA, it would be inclined to award IPAA the relief it seeks, as it appears DOI, by its own admission, does intend to pursue its May 3 policy, and the court of appeals, through its limitations on DOI action, gives the government little room to act with respect to take-or-pay policies. But barring futility, this court does not see final agency action as far as IPAA is concerned.

---

4. While "final agency action" was considered under § 1006(a) of the Federal Aviation Act, it appears that the court interpreted it identically as it would interpret final agency action under the APA.

5. Ripeness is also often mistaken for exhaustion or finality, but there is a critical distinction: "while exhaustion and ripeness are judge-made prudential doctrines, finality is, where applicable, a jurisdictional requirement." *Ukiah Valley Medical Center, v. FTC*, 911 F.2d 261, 264 n. 1 (9th Cir.1990).

6. "Review of nonfinal agency action is available in 'the most exceptional circumstances,' " and the "classic and oft-quoted formulation" of that standard comes from Judge Leventhal in *Association of National Advertisers, Inc., v. FTC*, 627 F.2d 1151, 1180 (D.C.Cir.1981) stating that a federal court may take jurisdiction before final agency action only in a case of "clear right," such as "outright violation of a clear statutory provision" or "violation of basic rights established by a structural flaw, and not requiring in any way a consideration of interrelated aspects of the merits." *Ticor*, 814 F.2d at 749. These issues do not appear implicated in IPAA, and therefore this exception does not apply.

The lack of final agency action with respect to IPAA becomes even clearer in light of another jurisdictional analysis. In *IPAA*, the court of appeals wrote, "[w]e find Assistant Secretary Deer's decision in Samedan Oil Corp. arbitrary and capricious in light of DOI's adoption of the *Diamond Shamrock* holding. Neither *take-or-pay payments nor take-or-pay settlement payments are royalty bearing unless and until they are credited toward the purchase of make-up gas.*" [ital. added]. This could be interpreted to mean that the court of appeals does not intend to allow DOI to ever collect royalties—in which case the court of appeals has lifted the agency out of the administrative lawmaking process—thus creating finality. But this is unreasonable. Under § 706 of the APA, a court has the power to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary and capricious...." 5 U.S.C. § 706(2)(A). Assuming the court of appeals has remained within the bounds of its authority under the statute, *IPAA's* statement that take-or-pay payments or settlement payments are not royalty bearing until they are credited toward make-up gas simply illustrates that there is but one interpretation of the agency's current rules. There would still be room for the agency to embark on a new rulemaking procedure which would not abide by *Diamond Shamrock*, where royalties on nonrecoupable payments might pass the arbitrary and capricious test. In fact, *IPAA* itself hints that the agency may do this if it so chooses. As the court states, "[u]nder *Chevron*, DOI's interpretation of the gross proceeds rule is held only to a standard of reasonableness, but the interpretation must be reasonable *in light of DOI's adoption of Diamond Shamrock.*" *IPAA*, 92 F.3d at 1258 (ital. in orig.). If DOI chooses at some point to reject *Diamond Shamrock* by taking

the proper procedural steps, it may try. When a court reviews an agency's actions under an arbitrary and capricious standard, the court is not to substitute its judgment for that of the agency. *Freeman Engineering Assoc., Inc. v. FCC*, 103 F.3d 169, 178 (D.C.Cir.1997).[7] Here, then it makes sense to apply this principle and find that the court of appeals was not requiring that the agency follow a particular rule, but was rather simply stating that as long as it plans to follow a particular rule, it must do so in a particular fashion. The agency is free to seek to disregard the rule altogether, however.

Unlike Samedan, IPAA and the others do not face any final actions which they may challenge. They are faced with no final rule which would force their members to pay royalties—leaving this court without jurisdiction to act at this time. Presumably, if the agency tried to implement the procedure struck down in IPAA through an administrative adjudicatory process, the targeted companies would then be faced with final agency action and could sue for appropriate relief in this court.[8] Perhaps losing 40 or 50 of these cases in this district might convince MMS to engage in a new rulemaking or return to its pre-IPAA policies. Until that time, this court is without jurisdiction to grant IPAA relief. Therefore, the court will dismiss IPAA's complaint.[9]

## B. *RELIEF AVAILABLE TO SAMEDAN*

Samedan, in addition to the setting aside of Assistant Secretary Deer'order, has sought to permanently enjoin the government from requiring it (i) to prepare reports, respond to inquiries, post sureties, pay sums, or be subject to claims of offset with respect to sums received as nonrecoupable take-or-pay settlement payments; (ii) taking any action to

7. Notably, in *Freeman*, the same panel as in *IPAA* ruled that the FCC acted inconsistently in its interpretation of a particular procedure, and remanded for further proceedings to remedy the inconsistency. In the case at bar, the court of appeals gave no remand: it simply pronounced the only way *Diamond Shamrock* may be interpreted.

8. Several suits concerning nonrecoupable take-or-pay settlement payments have recently been

instituted by Shell Oil and Texaco in this district. Shell Offshore, Inc. has filed civil actions 97–1121; 97–1120; 97–1119; 97–1118; 97–1117; 97–1116; 97–1115; 97–1114; 97–1113; 97–1112; and Texaco Inc. has also filed a similar suit, civil action 97–1269.

9. IPAA's failure to succeed in this litigation thus precludes any award of attorneys' fees it has sought.

issue a notice of violation or noncompliance, to commence a penalty proceeding, to assess civil or criminal penalties under 30 C.F.R. part 241; (iii) seeking to cancel oil and gas leases for failure to comply with any such orders or requests; or (iv) any other actions which would be contrary to the *IPAA* decision. Samedan also asks that the government dismiss with prejudice administrative proceedings currently pending against it involving the government's continuing claims for royalties on take-or-pay settlement payments received by Samedan, to the extent these cases involve nonrecoupable take-or-pay settlement payments.

The government agrees that Samedan is entitled to a "setting aside" of Assistant Secretary Deer's decision to assess royalties. Def.'s Mem. in Supp. of Def.'s Mot. for Entry of Order at 17. The government, however, contends that the court of appeals' ruling extends only to the previous assessment of royalties against Samedan, and not against any other present or future attempts to assess royalties here or anywhere else.

At its heart, this dispute is over the extent to which Samedan may effectively utilize the court of appeals' decision directly, or the extent to which it may apply collateral estoppel arguments, to preclude the government's attempts to collect additional sums or engage in acts which would help it collect additional sums based on a theory that nonrecoupable take-or-pay settlement payments are subject to royalties.

Samedan argues that (1) Assistant Secretary Deer's decision in Samedan Oil's case dealt with buyouts of purchase contracts for production from an Indian lease, but also discussed "buydown" settlements. Samedan thus asserts that MMS may not continue to enforce royalty payments on "buydowns" of nonrecoupable settlement payments against it, nor may it charge royalties for payments which logically fall under the umbrella of *IPAA*'s rationale. (2) Samedan also asserts that a permanent injunction should be granted to prevent the government from forcing the company to fight costly yet useless administrative procedures and to prevent the government from forcing it to set aside $14,-200,000, for example, in a current liability account to cover possible liability resulting from DOI orders to pay royalty amounts based on Samedan's receipt of take-or-pay settlements involved in four pending appeals.

The government counters that *IPAA* is limited in its reach: it merely reverses the Assistant Secretary's decision—and nothing more. The government believes Samedan to be seeking special treatment in the industry, where "[i]t is entitled to the assumption of a favorable D.C. Circuit ruling in the future in any and all matters arguably involving contract settlements.... Samedan believes it is equally entitled to some form of comfort that, whatever happens to the rest of the industry and whatever happens in the development of the law, it will never again need to worry about any legal issue related to contract settlements." Def.'s Opp. to Samedan's Mot. for Perm. Inj. Relief, June 2, 1997 at 2.

DOI then contends that collateral estoppel should not be used to extend *IPAA's* reach against the government, especially in light of the fact that another circuit, the government claims, suffered from the effects of the has disagreed with *IPAA*.

### Effect of IPAA on Samedan

The court believes that the effect of *IPAA*, with respect to Samedan, is much broader than simply overturning DOI's order of payment. Unlike IPAA, which only suffered from the effects of the May 3 letter, deemed not to be "final agency action," Samedan bore the brunt of a December 2, 1993 assessment order and the Assistant Secretary's September 16, 1994 decision upholding that assessment of royalties. As discussed previously, it is this court's reading of *IPAA* that though the court of appeals did not mean to preclude further rulemaking by DOI, it has, with respect to Samedan, announced the only workable policy DOI may pursue under its current rules. And, while IPAA and its members must wait for adjudications before seeking relief, Samedan need not: it has had its "final agency action." But the government seeks to pursue not only 11 other bites at Samedan's apple in various circuits around

the country, it also suggests it can even bite again here. The court disagrees.

At the essence of *IPAA's* review of DOI's gross proceeds rule is the issue of "the link between the funds on which royalties are claimed and the actual production of gas." *IPAA*, 92 F.3d at 1260. Our circuit determined that under *Diamond Shamrock*, a link was required between payments subject to royalty and the physical severance of gas. *IPAA* then stated that this link is "missing" with respect to nonrecoupable take-or-pay settlement payments, as these payments are *"never* credited as payment for any gas actually severed from the ground." *Id.* at 1259. (ital. in orig.) The government now asks the court to ignore the inevitable consequences of these statements.

The key to understanding the reach of the court of appeals' decision is logic. *IPAA* found that there was but one logical, consistent way to apply *Diamond Shamrock*. That being the case, it appears that the court of appeals meant to include circumstances—other than simple buyouts—where logic would dictate the exact same result. With but one acceptable outcome of any case involving true nonrecoupable take-or-pay settlement payments, if the government seeks to depart from *IPAA's* determination that no royalties accrue on nonrecoupable payments or settlement payments, Samedan is entitled to actual and declaratory relief. Samedan has four pending administrative appeals, which appear to deal with buyouts. These would clearly fall under the shadow of *IPAA*.

The government prays for pause before the court would grant such relief. First, it argues that logic does not always dictate that nonrecoupable take-or-pay payments are non-royalty bearing. It does not believe that *IPAA* bans collecting such royalties per se, but merely banned them in a particular case, and on a very limited fact pattern presented by Samedan's presumably unique status. This would allow the government to try again to collect the same type of royalties our appeals court rejected, but upon a different set of facts. Second, the government challenges the power of this court to establish law for courts in other circuits. DOI points to a recent decision of the Sixth Circuit suggesting that contrary to *IPAA*, there are circumstances where such nonrecoupable payments might bear royalties. If this district court were to grant Samedan injunctive relief, it would prevent other courts from reviewing fair questions of law—a power only the Supreme Court has, the government asserts.

█ Thus, this court must examine whether *IPAA* leaves open room for new interpretations of the gross proceeds rule as applied to nonrecoupable take-or-pay payments, and second, whether this court may enjoin the government from taking action against any of Samedan's contracts anywhere in the country based upon this decision.

In *United States v. Century Offshore Management Corp.*, 111 F.3d 443 (6th Cir.1997), that court ruled that an up-front payment made in exchange for a substituted contract that changes the price of the old contract, followed by new purchases, is a sufficient cause of new production of gas to qualify as production sold under the gross proceeds rule and is subject to federal royalties, because such arrangements are "clearly linked to gas 'production saved, removed or sold,'". *Id.* at 445. The government argues that this holding is irreconcilable with *IPAA*, suggesting that other interpretations of the rule are possible, and that this fact counsels against any injunction in Samedan's favor, as it would undermine the ruling of a court of appeals from a sister circuit.

This argument mischaracterizes both the meaning of the *Century* decision and misunderstands the role of collateral estoppel. To begin, there is no conflict between *IPAA* and *Century* with regard to the issue of nonrecoupable take-or-pay payments. The corporations involved in *Century* basically tried to avoid make-up contracts, which would be subject to royalties, by creating entirely new replacement contracts which differed little from make-up gas arrangements. The Sixth Circuit saw through this, noting that these contracts could not properly be characterized as buydowns or buyouts (as in Samedan's case) but rather that "[t]he parties intended a continuing relationship, and [ ] much of the gas identified in the original contracts was

delivered under the replacement contracts." *Id.* at 448. The Sixth Circuit made no attempt to suggest its holding was contrary to *Diamond Shamrock* or *IPAA* for that matter. In fact, *Century* goes to great lengths to show how it concurs with those decisions. Just as *IPAA* found that no royalties were due until make-up gas was taken—an occurrence providing the necessary link between payments and the physical severance of gas—so, too, did *Century* find that though the gas at issue was not technically make-up gas, it was "analogous" to make-up gas in that it had the requisite link to production—the link required by *IPAA*. *Id.* at 449–50. Our court of appeals merely indicates that true nonrecoupable take-or-pay payments or settlement payments *by their nature* provide no such nexus, a holding which does not conflict with *Century*. It would not be out-of-line, then for this court to grant Samedan's desired relief in accordance with this holding.

To do so, however, would mean that the government could not proceed with administrative adjudications on nonrecoupable take-or-pay payments, etc., or institute new ones, regardless of in which circuit such proceedings would take place. The government maintains that to implement *IPAA* on such a widespread basis, even as it applies only to Samedan, "effectively asks this Court to treat the United States Court of Appeals for the District of Columbia Circuit as the de facto United States Supreme Court," as it would stop the administrative adjudicatory process in all other circuits. Despite the government's melodramatic phrasing, Samedan is entitled by law to estop the government from relitigating this case elsewhere, even if this reaches beyond the borders of the nation's capital city.

### Collateral-Estoppel

In *United States v. Stauffer Chemical Co.,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984), the Supreme Court permitted a corporation receiving a favorable ruling in one circuit to estop the government from relitigating the same issue in other circuits—at least in circuits where no decision on the merits had taken place. The court refused to

except the government from collateral estoppel application in that case as it "would substantially frustrate the doctrine's purpose of protecting litigants from burdensome relitigation and of promoting judicial economy." *Id.* at 172, 104 S.Ct. at 579. The government agrees that though "Samedan may be able to estop MMS 'in a case where the Government is litigating the same issue arising under virtually identical facts,' " the government believes that the law in other jurisdictions must be given time to develop in order to determine whether Samedan will face such a circumstance. Furthermore, the department notes that "[w]hether MMS would be estopped from litigating either a buyout or a buydown against Samedan in the Sixth Circuit is a question left entirely open by the Supreme Court in *Stauffer Chemical.*" Def.'s Opp. to Samedan's Mot. for Perm. Inj., at 6.

 The government is again mistaken, both as to the ability of Samedan to estop the government in general, and as to the ability of Samedan to take advantage of *IPAA* in the Sixth Circuit.

In *Stauffer*, the Environmental Protection Agency attempted to use private inspectors to investigate a Stauffer chemical plant in Wyoming under a provision of the Clean Air Act. The Tenth Circuit ruled in Stauffer's favor, holding that under § 114(a) of the Act, they were not "authorized representatives" capable of inspecting. When the EPA attempted to do the same thing in another Stauffer plant, this time in Mt. Pleasant, Tennessee, the company refused to allow the private inspectors in, and the government began a civil contempt proceeding in federal district court. The district court sided with the government as to the meaning of "authorized representatives." Eventually, without reaching the merits of the case, the Supreme Court ruled that "the doctrine of mutual defensive collateral estoppel is applicable against the government to preclude relitigation of the same issue already litigated against the same party in another case involving virtually identical facts." *Id.* at 169, 104 S.Ct. at 578. In short, the adjudication in the Tenth Circuit controlled the outcome of the suit in the Sixth Circuit as a matter of

estoppel despite the fact that these are merely sister circuit courts of appeal.

Though the government draws heavily from Justice White's concurrence in *Stauffer* to suggest that a company should not be permitted to claim "a right to a unique status," by having one rule apply to it and another to every other company in the industry, this is clearly a possibility left open by the majority opinion in that case. *See, Id.* at 182, 104 S.Ct. at 584. Indeed, the majority explicitly stated that the EPA was free to litigate the meaning of the challenged provision in *Stauffer* against others, but not against Stauffer itself, thus creating an industry exception. Here, Samedan was meant to be an industry exception from the start—selected, as it was, as a "test case," and there is no reason that our court of appeals' decision should not apply to all Samedan contracts, wherever they are subject to dispute.[10] No doubt, had the government won in *IPAA*, it most certainly would have argued that Samedan's contracts nationwide were covered as a matter of collateral estoppel. But even if Samedan were not a test case, under *Stauffer*, this court agrees that Samedan may block the government from relitigating what would essentially be the same issue against it elsewhere.

*IPAA* is very demanding as to what the current law is concerning nonrecoupable take-or-pay payments, to the point that all counter-interpretations must be deemed illogical. DOI's claim that this court should allow it to continue litigating the essential ruling in *IPAA* translates as a request to continue to throw illogic—though varying degrees of illogic, depending on the exact facts—at Samedan. The court will not allow it. Therefore, the pending administrative appeals against Samedan will be dismissed, and further attempts to collect royalties from Samedan in a mariner inconsistent with the ruling announced in *IPAA* will be enjoined.

The government asserts that by dismissing these cases the court is acting without juris-

diction by in effect deciding pending administrative matters. Def.'s Opp. to Samedan's Mot. for Perm. Inj. at 13. The court does not agree. There is no purpose in continuing with the agency's adjudicatory process as there can be only one result under *IPAA*, and under the doctrine of collateral estoppel there is no reason to force Samedan to continue to fight the agency administratively. Therefore, the court will dismiss Samedan's pending administrative appeals.

■ And this goes for any actions DOI is taking or will take within the Sixth Circuit, as well. Though the government is correct that it is an open question under *Stauffer* whether a court can estop proceedings in a circuit which has already decided the issue in question, the court in *Century* did not discuss nonrecoupable take-or-pay payments or settlement payments, nor did it discuss buyouts or buydowns. It said so itself.[11] Thus, when those concepts are at issue with respect to Samedan—as they are in its pending administrative appeals, the government will be prevented from relitigating them in the Sixth Circuit as well as elsewhere.

And this relief should not simply extend to administrative appeals, but to any corollary matter whose only purpose is to assist the government in relitigating these issues with Samedan. In other words, any set aside of funds, production of documents, etc. whose only purpose leads to charging Samedan royalties on nonrecoupable take-or-pay payments or settlement payments in contravention of *IPAA* will be enjoined as well.

As discussed, DOI is free to embark upon a new rulemaking which would not comport with *Diamond Shamrock*. Obviously, this court's injunction would not extend to such a procedure, or the attempts to collect royalties on nonrecoupable take-or-pay monies which would result from that new rulemaking. But under the current state of affairs, Samedan is entitled to injunctive relief preventing the government's efforts at taxing

---

10. The last time this court checked, there are very few natural gas wells in Washington, D.C., so the idea that Samedan's ruling would extend only to this circuit is absurd.

11. Both the government and Century attempted to frame the issue as a buy-down or a buy-out, "[n]either characterization adequately and fully describes this payment, however." *Century,* 111 F.3d at 448.

unlawful royalties, as outlined here and in *IPAA.*

## CONCLUSION

For the reasons given above, IPAA's motion for entry of order implementing the mandate of the court of appeals will be denied, and its case dismissed. Samedan's motion for entry of order implementing the mandate of the court of appeals will be granted in part and denied in part, and defendants' motion will be granted in part and denied in part. Samedan's motion for entry of a permanent injunction will be granted, in accordance with the opinion above.

A separate order shall issue this date.

## ORDER AND JUDGMENT

Having considered the mandate issued by the court of appeals in this case, IPAA *et al.*'s motion for entry of order implementing the mandate of the court of appeals, Samedan's motion for entry of order implementing the mandate of the court of appeals, defendants' motion for entry of order implementing the mandate of the court of appeals and Samedan's motion for a permanent injunction, it is hereby ORDERED, in accordance with the accompanying memorandum opinion;

that the judgment entered for defendants on June 14, 1995 is VACATED in both consolidated cases; and it is further ORDERED

that IPAA *et al.*'s motion for entry of order implementing mandate of the court of appeals is hereby DENIED; and it is further ORDERED

that Samedan's motion for entry of order implementing the mandate of the court of appeals is hereby GRANTED in part and DENIED in part; and it is further ORDERED

that defendants' motion for entry of order implementing the mandate of the court of appeals is hereby GRANTED in part and DENIED in part; and it is further ORDERED

that plaintiffs' consolidated motion for summary judgment is GRANTED in part and DENIED in part, and that defendants' motion for summary judgment is GRANTED in part and DENIED in part; and it is further ORDERED

that in Civil Action No. 93–2544, plaintiffs' motion for summary judgment with respect to the May 3, 1993 letter is DENIED, against the Independant Petroleum Association of America ("IPAA"), the West Virginia Oil & Natural Gas Association, the Independent Oil and Gas Association of West Virginia, the Kansas Independent Oil and Gas Association, the Natural Gas Supply Association, the American Association of Professional Landmen, the Association of Oilwell Servicing Contractors, the American Petroleum Institute, the Florida Independent Petroleum Producers Association, Inc., the Independent Oil and Gas Association of New York, the Independent Oil and Gas Association of Pennsylvania, the Independent Oil Producers' Agency, the Independent Oil Producers Association Tri–State, the Independent Petroleum Association of Mountain States, the Independent Petroleum Association of New Mexico, the International Association of Geophysical Contractors, the Kentucky Oil and Gas Association, the Louisiana Independent Oil and Gas Association, the Michigan Oil and Gas Association, the National Stripper Well Association, the New York State Oil Producers Association, the Ohio Oil & Gas Association, the Oklahoma Independent Petroleum Association, the Rocky Mountain Oil & Gas Association, the Texas Independent Producers and Royalty Owners Association, and the West Central Texas Oil and Gas Association; and it is further ORDERED

that the complaint in Civil Action No. 93–2544 is DISMISSED; and it is further ORDERED

that plaintiffs' motion for summary judgment is GRANTED in part in favor of Samedan Oil Corporation in Civil Action No. 94–2123 and DENIED in part; and it is further ORDERED

that plaintiffs' motion for summary judgment is GRANTED with respect to count I of its complaint with respect to defendant's December 2, 1993 order; and it is further ORDERED

that Assistant Secretary Deer's decision in Samedan Oil Corporation, MMS–94–0003–IND (Sept. 16, 1994), is hereby REVERSED and SET ASIDE, and that the underlying Order and Bill for Collection (FBIL 40943001) issued to Samedan Oil Corporation on December 2, 1993 is hereby VACATED; and it is further ORDERED

that defendants' counterclaim to enforce the December 2, 1993 order for payment of royalties is hereby DISMISSED; and it is further ORDERED

that with respect to Samedan, it is hereby DECLARED that royalties are not owed on nonrecoupable take-or-pay settlement payments, as described in the accompanying memorandum opinion and the decision by the court of appeals, received by persons responsible for the payment of royalties on federal and Indian oil and gas leases; and it is further DECLARED

that these nonrecoupable natural gas contract settlement payments referred to above are not part of the value of production of natural gas produced on federal and Indian leases, nor are they part of the gross proceeds from the sale of production from such leases; and it is further ORDERED

that plaintiffs' motion for summary judgment on counts II and III is DENIED insofar as they challenge DOI's May 3, 1993 letter, deemed not to be final agency action; and it is further ORDERED

that defendants' motion for summary judgment is DENIED as to counts I, IV, and V, but GRANTED as to counts II and III insofar as the May 3, 1993 letter does not constitute final agency action, and Counts II and III are hereby DISMISSED with prejudice; and it is further ORDERED

that count IV of plaintiffs' complaint is DISMISSED pursuant to the court of appeals' decision; and it is further ORDERED

that count V of plaintiffs' complaint is DISMISSED as moot.

Upon consideration of Samedan's motion for a permanent injunction, that motion is GRANTED; and it is further ORDERED

that Secretary of the Interior Bruce Babbitt, Assistant Secretary of the Interior Bob Armstrong, Assistant Secretary of the Interior Ada Deer, their successors in office, and their employees are permanently ENJOINED from

(i) requiring Samedan Oil Corporation to prepare reports, respond to inquiries, pay sums, post sureties, or be subject to claims of offset with respect to sums received as nonrecoupable take-or-pay settlement payments as described in the accompanying memorandum opinion and in *IPAA v. Babbitt*, 92 F.3d 1248, 1252;

(ii) taking any action to issue a notice of violation or noncompliance, to commence a penalty proceeding, to assess civil or criminal penalties under 30 C.F.R. Part 241;

(iii) seeking to cancel oil and gas leases for failure to comply with any such orders or requests; or

(iv) otherwise engaging in any further conduct inconsistent with Order; and it is further ORDERED

that in conjunction with this relief defendants are directed to DISMISS with prejudice the following administrative matters involving their continuing claims for royalties on take-or-pay settlement payments received by Samedan: Docket Nos. MMS–95–0054, MMS–95–0055, MMS–95–0056, and MMS–96–0059; and it is further ORDERED

that IPAA *et al.*'s request for fees and costs is hereby DENIED; and it is further ORDERED

that pursuant to local rule 215, Samedan and defendants will confer and attempt to reach agreement as to the issue of attorneys' fees and costs in Samedan's action; and it is further ORDERED

that a status conference on fees is scheduled for 4:30 p.m. September 24, 1997, and plaintiff's time for filing a motion under Federal Rule of Procedure 54(d)(2)(B) is extended until 10 days thereafter.

This order shall be deemed a final judgment, as set forth herein.

SO ORDERED.