# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 7, 2008     Decided April 18, 2008

No. 07-7062

PHARMACEUTICAL CARE MANAGEMENT ASSOCIATION,
APPELLANT

v.

DISTRICT OF COLUMBIA AND
ADRIAN FENTY, IN HIS OFFICIAL CAPACITY AS MAYOR OF THE
DISTRICT OF COLUMBIA,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01082)

*Paul J. Ondrasik, Jr.* argued the cause for appellant. With him on the briefs were *Martin D. Schneiderman* and *Linda S. Stein*.

*Robin S. Conrad* and *Jonathan D. Hacker* were the brief for *amici curiae* America's Health Insurance Plans, et al. in support of appellant.

*James C. McKay, Jr.*, Senior Assistant Attorney General, Office of Attorney General for the District of Columbia, argued the cause for appellee. With him on the brief were *Peter J.*

*Nickles*, Interim Attorney General, *Todd S. Kim*, Solicitor General, and *Lutz Alexander Prager*. *Edward E. Schwab*, Deputy Attorney General, entered an appearance.

*Jan A. May*, *Bruce Vignery*, and *Michael Schuster* were on the brief for *amici curiae* American Association of Retired Persons, et al. in support of appellee. *Stacy J. Canan* entered an appearance.

Before: RANDOLPH and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: The plaintiff – the Pharmaceutical Care Management Association – is a national trade organization representing pharmacy benefit managers. Pharmacy benefit managers act as "middlemen" hired by health benefit providers (such as employers, health maintenance organizations, and public and private health plans) "to provide prescription drug benefit administration and management services."[1] One important role of a pharmacy benefit manager is to pool health benefit providers and negotiate discounts on pharmaceuticals from manufacturers or pharmacies. *See* Fed. Trade Comm'n, *Pharmacy Benefit Managers: Ownership of Mail-Order Pharmacies* 41-60 (2005). A health benefit provider may find it difficult to judge the value of a pharmacy benefit manager's services without information about the relationships between the manager and manufacturers or

---

[1] Thomas P. O'Donnell & Mark K. Fendler, *Prescription or Proscription? The General Failure of Attempts to Litigate and Legislate Against PBMs as "Fiduciaries," and the Role of Market Forces Allowing PBMs to Contain Private-Sector Prescription Drug Prices*, 40 J. HEALTH L. 205, 205-07 (2007).

pharmacies. *See* Fed. Trade Comm'n & Dep't of Justice, *Improving Health Care: A Dose of Competition* ch. 7, at 16 (2004). For example, a pharmacy benefit manager could work against the health benefit provider's interest by substituting a more expensive drug than the one prescribed in order to receive a rebate from the manufacturer that is not passed on to – or shared with – the health benefit provider. O'Donnell & Fendler, 40 J. HEALTH L. at 212; *see also Pharmacy Benefit Managers* at 59 (noting that large pharmacy benefit managers retained between 30 and 65 percent of rebate payments in 2003).

The Association brought this action seeking an injunction against the enforcement of the District of Columbia's AccessRx Act of 2004, D.C. CODE § 48-831.01 *et seq.* Title II of the Act requires, among other things, pharmacy benefit managers to act as fiduciaries, to disclose the content of their contracts with pharmacies and manufacturers, and to pass on any payments or discounts they receive from pharmacies or manufacturers. *Id.* § 48-832.01(b)-(c). Title II applies to pharmacy benefit managers working with both employee-based and non-employee-based health benefit providers. *Id.* § 48-831.02(4)(a).

Claiming that the Employee Retirement Income Security Act of 1974 (ERISA) preempted Title II and that Title II was otherwise unconstitutional, the Association obtained a preliminary injunction against the enforcement of the District's statute. *Pharm. Care Mgmt. Ass'n v. District of Columbia*, No. 04-1082 (D.D.C. Dec. 21, 2004). While the District's appeal of the preliminary injunction was pending in this court, the First Circuit upheld a Maine statute that is similar to Title II. *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 297 (1st Cir. 2005). Because the Association was the losing party in *Rowe*, we remanded this case to the district court to consider the preclusive effect of the First Circuit's opinion. *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 173 F. App'x 3 (D.C. Cir. 2006). The

District then amended its AccessRx Act of 2004 to conform to the Maine law. AccessRx Clarification Amendment Act of 2006, published as part of the Fiscal Year 2007 Budget Support Act of 2006, 53 D.C. Reg. 6899 (Aug. 25, 2006). In granting summary judgment against the Association, the district court held that the amended AccessRx Act was nearly identical to the Maine law, that the Association had a full and fair opportunity to litigate its claims in *Rowe*, and that the Association's loss in *Rowe* precluded it from relitigating those claims in this case. *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 477 F. Supp. 2d 86 (D.D.C. 2007).

The question on appeal is whether the judicially-created doctrine of collateral estoppel bars the Association's claims. We are concerned with what is known as non-mutual defensive estoppel. This aspect of the doctrine precludes a plaintiff from contesting an issue it has previously litigated and lost in another case against a different defendant. The estoppel here would be non-mutual because if the Association had won its case against the Maine law, the District would not have been barred from defending its identical statute. (To hold otherwise would be to deprive the District of due process – it would not have had its day in court. See *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971); *Hansberry v. Lee*, 311 U.S. 32, 40 (1940).) The preclusion is defensive because the defendant invokes the bar against the plaintiff's claims. *Compare Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (offensive), *with Blonder-Tongue*, 402 U.S. at 330 (defensive).

Even when collateral estoppel would otherwise apply, there are numerous exceptions. Of particular importance in this case is the exception for cases presenting "unmixed questions of law." Collateral estoppel does not apply with the same force to unmixed questions of law as it does to mixed questions of law

and fact or to pure questions of fact.  *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170-71 (1984); *Montana v. United States*, 440 U.S. 147, 162-63 (1979); *United States v. Moser*, 266 U.S. 236, 242 (1924).  Although the Supreme Court has acknowledged that the purpose and application of this exception are not entirely clear, the exception continues to have force.  *Stauffer Chem. Co.*, 464 U.S. at 171-72.

In cases involving mutual collateral estoppel, the exception applies only if the issue is one of law and the facts of the cases are substantially unrelated.  RESTATEMENT (SECOND) OF JUDGMENTS § 28(2)(a); *see also Stauffer Chem. Co.*, 464 U.S. at 171, 173.  Less is required for the exception to apply in a case of non-mutual estoppel – such as this case.  In a non-mutual case, "an issue is *not* precluded if it is 'one of law and treating it as conclusively determined would inappropriately foreclose opportunities for obtaining reconsideration of the legal rule upon which it was based.'"  *Chicago Truck Drivers Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 531 (7th Cir. 1997) (quoting RESTATEMENT § 29(7)).  To apply collateral estoppel under these circumstances would prevent the court from performing its function of developing the law.  *Id.* (citing RESTATEMENT § 29 cmt. i).

We do not believe collateral estoppel bars the Association's claims.  Both parties agree that the issues presented here are legal.  To foreclose our reconsideration of the legal issues would not aid judicial economy.  *See Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981).  A trade association could readily avoid the estoppel consequence of a loss by having one or more of its members bring the lawsuit.  Applying collateral estoppel here would also freeze the development of the law in an area of substantial public interest.  *See* RESTATEMENT § 29 cmt. i.

In addition, practical considerations counsel against application of collateral estoppel in this case. Collateral estoppel is generally inappropriate when the issue is one of law and there has been a change in the legal context after the first decision. RESTATEMENT § 28(2)(b); *see, e.g.*, *Montana,* 440 U.S. at 161; *Am. Med. Int'l, Inc. v. Sec'y of HEW*, 677 F.2d 118, 120-21 (D.C. Cir. 1981); *Kania v. Fordham*, 702 F.2d 475, 476 n.2 (4th Cir. 1983). After the First Circuit's decision in *Rowe*, the Department of Labor promulgated a rule requiring ERISA plans to disclose information about their contracts with service providers. *Annual Reporting and Disclosure*, 72 Fed. Reg. 64,710 (Nov. 16, 2007). In order to facilitate the plans' ability to make these disclosures, the Labor Department has proposed a rule that would require service providers to disclose certain financial information to the plans they serve. *Reasonable Contract or Arrangement Under Section 408(b)(2) – Fee Disclosure*, 72 Fed. Reg. 70,988 (Dec. 13, 2007). Pharmacy benefit managers are listed among the service providers required to make disclosures, *id.* at 70,989, and at least some of the information the draft rule requires them to disclose is similar to that required under Title II of the District's AccessRx Act. These developments, particularly if the proposed rule is promulgated, may change the legal analysis regarding ERISA preemption, though we emphasize that we express no opinion on the merits of the preemption issue.

For the foregoing reasons, the order granting the District's motion for summary judgment is vacated and the case is remanded for consideration on the merits.

*So ordered.*